GULF, COLORADO & SANTA FE RAILWAY COMPANY v. W. F. HUDSON.

No. 6688.

1. **Railway Company not Fencing its Road can not Question the Utility of Fencing, etc.**—A railway company that has not fenced its road has no right to enter into an inquiry whether an injury for which it is sued would have occurred had its road been properly fenced.

2. **Same—Case in Judgment.**—Suit for injury in killing and wounding cattle against a railway company, the road at the place of the injury not being fenced. The plaintiff had a drove of cattle under herd a half mile from the track. In a thunder storm at night the herd stampeded and drifted upon the track. A witness was asked by the defendant, "what effect, if any, as to checking or holding in check a herd of cattle when in herd and stampeded will an ordinary wire fence have on such herd under such circumstances?" expecting to prove that such a fence would not have prevented the injury. *Held*, that the question and answer were properly rejected.

3. **Case Adhered to.**—Railway v. Childress, 64 Texas, 349, adhered to.

4. **Ordinary Care for Safety of Stock.**—Where cattle are injured upon a railway track unfenced where it could be fenced and where it was not unlawful for cattle to be, the railway company can not show ordinary care. Without fencing in such case ordinary care can not exist.

5. **Care for Injured Animals—Burden of Proof.**—In a suit for killing and injuring cattle against a railway company, and in defense it is sought to lessen the damages by showing that some of the cattle injured upon the track by the train running upon them would not have died but for want of proper care, it devolved upon the defendant to show such want of proper care.

6. **Charge.**—Repetitions of charge, or charge upon issues not made by the testimony, are properly refused. See instances.

7. **Verdict.**—See facts where verdict for $775.13 was sustained by the record.

APPEAL from Johnson. Tried below before Hon. J. M. Hall.

The opinion gives a statement.

*J. W. Terry* and *Smith & Davis*, for appellant. — 1. The statute of this State making railroad corporations liable for all stock killed by the engine or cars does not extend to cattle under herd in charge of the owner or his hands, servants, or employés, but to stock grazing at large on the unenclosed lands contiguous to the railroad. Rev. Stats., art. 4245; Scofield v. Railway, 22 Am. and Eng. Ry. Cases, 535 (note), 537–540; Railway v. Hughes, 68 Texas, 291.

2. If although the track of defendant had been fenced at the place of collision appellee would have sustained the same damage that he did, and

if appellant had had the best of fences still the result would have been the same, then appellant would not be liable merely on account of the absence of the fence, and hence the court erred in excluding the evidence offered.

3.    The court erred in refusing to give in charge to the jury the following special instructions asked by defendant:   "And the court instructs you that the statute of this State which provides that in case the defendant company fence in their road then it shall be liable only in case of injury resulting from the want of ordinary care, and the statute of this State which provides that every railroad company shall be liable to the owner of stock killed or injured by the locomotive or cars of such railroad company, have no relation and do not apply to the case now before you; and you are instructed that the plaintiff can not recover in this case unless he shall show by a preponderance of all the evidence in the case that his injury or loss was caused by the negligence of defendant's agents, servants, or employes.   And you are further instructed in this case that if the agents, servants, and employes of defendant used such care, skill, and prudence as skillful, prudent, and careful agents, servants, and employes would use under like circumstances to prevent the injury or damage to plaintiff's cattle, if you find he has sustained any, then you will find for the defendant, and so say by your verdict."   Daniels v. Railway, 22 Am. and Eng. Ry. Cases, 610; Smead v. Railway, 23 Am. and Eng. Ry. Cases, 241–244; Wetly v. Railway, 24 Am. and Eng. Ry. Cases, 372–376; Knight v. Railway, 23 Am. and Eng. Ry. Cases, 189, 190; 1 Thomp. on Neg., secs. 27, 28; Scofield v. Railway, 22 Am. and Eng. Ry. Cases, 535.

*George D. Green, J. F. Henry* and *Crane & Ramsey,* for appellee.—
1.   A railway company is liable to the owner for the value of all stock killed or injured, and this without regard to the degree of care or negligence which may have attended it, absolutely and at all events where the company has not fenced its road.   This is true whether the cattle stray or are caused by fright to run on said road while being driven from point to point, or whether they are grazing on the commons without restraint of any kind.   Rev. Stats., art. 4245; Railway v. Childress, 64 Texas, 346; Railway v. Cocke, 64 Texas, 151; Railway v. Muldrow, 54 Texas, 233; Railway v. Davis, 1 Ct. App. C. C., sec. 149; 1 Ct. App. C. C., sec. 263.

2.   The appellant having willfully refused to comply with the requirements of the statute, it can not avoid or evade the penalties provided for such refusal by showing by any kind of testimony that the same injury would have been inflicted on appellee's property even though it had complied with its statutory duty.   It therefore follows that the court committed no error in excluding the evidence of the witness Haley.   Railway v. Scudder, 40 Ohio St., 173; Congdon v. Railway, 48 Am. Rep., 793; Cressy v. Railway, 59 N. H., 564.

3.   Appellant's second assignment of error and all propositions there-

under are to the effect that article 4245 of the Revised Statutes has no application to the case at bar, and that the court below erred in not charging the jury to that effect. From this we dissent, and deem it unnecessary to do more than to refer to the preceding counter-proposition and authorities thereunder.

STAYTON, CHIEF JUSTICE.—Appellee owned and was driving a large herd of cattle along the public highway from Texas to the Indian Territory, when at night he stopped them on unenclosed land more than one-half mile from appellant's road. During the night there was heavy rain accompanied with thunder and lightning. The cattle, despite the efforts of the servants of appellee to prevent it, drifted to and upon the railway, and while there, the night being very dark, many of them were killed and crippled by collision with a train on appellant's road, which was unfenced. To recover damages for the loss thus occasioned this action was brought, and appellee recovered a judgment $775.13.

During the trial appellant proposed to ask a witness shown to be familiar with the handling of cattle, "what effect, if any, as to checking or holding in check a herd of cattle when they are in herd and stampeded will an ordinary wire fence have on such herd under such circumstances?" expecting to prove that such a fence would not have prevented cattle so situated from entering on the roadway. To this evidence appellee objected, and the court sustained the objection. This ruling is assigned as error.

The statute provides that "each and every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such railroad company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. If the railroad company fence in their road, they shall only then be liable in case of injury resulting from the want of ordinary care." Rev. Stats., art. 4245.

As said in Railway v. Childress, 64 Texas, 349, the statute "clearly intended to provide, first, what should make out a case for recovery on the part of the plaintiff, and then what should constitute the only defense which the defendant could set up to defeat it. * * * The clear meaning of the statute, as derived from its language, is that if the owner of the stock proves that it has been killed or injured by the cars of the company he shall recover damages, unless they prove that their road was fenced, in which event he shall not recover unless the injury resulted from want of ordinary care on the part of the railroad company."

There may be another exception not now necessary to consider. The offer was to prove by the opinion of a witness that the exercise of that care prescribed by the Legislature which must exist before an inquiry will be entered into as to the existence or nonexistence of ordinary care would have been unavailing.

We are of opinion that a railway company that has not fenced its road has no right to enter into an inquiry whether the injury would have occurred had its road been properly fenced. If a railway company does not fence its road the law makes this such negligence as fixes liability on the company for injury to stock by locomotives and cars running on the road at any place where the road might lawfully be fenced; and from this liability a company can not be relieved by evidence that the injury would have occurred had the road been fenced, unless it be shown that the injury occurred at a place where it was unlawful for stock to run at large, or that the injury was the immediate and proximate result of the owner's act. The evidence was properly rejected, and would have been had it not been restricted to "an ordinary wire fence."

Appellant's counsel asked instructions in different forms to the effect that it would not be liable if its employes used ordinary care, and these were properly refused; for it was shown that the road was unfenced, and not shown that it might not lawfully have been fenced at the place where the injury occurred, nor that the cattle were injured at a place where it was unlawful for them to be at large. In such a case without fence ordinary care can not exist.

The court having charged the jury that the burden of proof was on the plaintiff, was requested to repeat this in a charge which embodied the proposition that it was incumbent on him to show that the injury resulted from the negligence of the company's employes.

The court did not err in refusing to give the charge requested, which would have been misleading.

Some of the cattle injured did not die at once, and it seems to have been contended that some that did subsequently die from injuries received would not have died if they had been given proper attention; but we do not see from the evidence that there was ground on which to base such a claim.

In this state of the case the court was asked to instruct the jury "that the burden of proof is on the plaintiff to show that such cattle were not so injured or made worse or caused to die by the acts of plaintiff as aforesaid, if you find such were his acts."

It is not claimed that the cattle that subsequently died did not receive the injuries from which they died by contact with the locomotive or cars, but that the injuries so received would not have caused so much loss to appellee as was brought about by his subsequent mismanagement.

Under this state of facts the burden of proof to show mismanagement on the part of appellee and that greater loss resulted from this than would from the injuries caused by appellant was upon the latter, and the court properly refused to give the charge requested.

It is claimed that the judgment is excessive. Many witnesses testified

as to the number and kinds of cattle killed outright and so crippled as to be of but little or of any value, but the plaintiff testified as follows:

"The accident occurred six miles south of Fort Worth on the Gulf, Colorado & Santa Fe Railway; the dead cattle were lying right along on side of track from twenty to thirty feet from the side of track; some of the crippled cattle hobbled off some distance from the track. When I got there I could not tell how many of the cattle were dead; some had one leg, some two legs, and one had three legs broken, that were not dead; they were down, but I don't remember how many were dead when I got there, but I drove off everything that I could. * * * I think seven out of the forty-two survived; the balance all died. The kind of cattle that were killed and crippled were one, two, and three-year-old steers. I can't tell the number of each. There were of the number that died in all 60 two-year-olds, 40 yearlings, and 39 or 40 three-year-olds. In June, 1885, three-year-olds were worth $20 to $22, the two-year-olds $14 to $16 per head, and the yearlings were worth from $10 to $11 each. I did not go all the way to the Indian Territory with the cattle. I was with the herd four or five days after the accident. All the cattle did not die within four or five days after the accident. I did not see all the cattle die; I was not with the herd all the time. Of the number left dead and wounded at the place of accident I can not say how many were three years old or two years old or one year old; I can not divide them up. Of the six that died the next day my recollection is that three were three years old and three were two years old. I made a memorandum of the cattle, but I have not got it with me."

Under this and the other evidence offered, we can not say that the judgment is excessive.

The court instructed the jury that appellant would not be liable for cattle killed or injured otherwise than by the locomotive or other parts of the train, and it is not now claimed that the jury disregarded that part of the charge or found in this respect contrary to the evidence.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered May 30, 1890.