## INTERNATIONAL–GREAT NORTHERN R. CO. v. ALLEN. (No. 9183.)

Court of Civil Appeals of Texas. Galveston.
April 26, 1928.

Rehearing Denied May 31, 1928.

1. Railroads ⚎406—Railroads are liable for stock killed by their trains at point where they could fence tracks but have not done so (Rev. St. 1925, art. 6402).

Under Rev. St. 1925, art. 6402, railroad companies are not relieved, by adoption of the stock law, from liability for stock killed by their trains at a point where they could fence their tracks and have not done so.

2. Railroads ⚎411(5)—Railroads are not liable for injuries to stock beyond ordinary care, where not permitted to fence tracks, or where to do so would be dangerous to employees or inconvenience public.

Railroads are not liable for injuries to stock struck by trains beyond ordinary care at a place where it is not permitted to fence its track, or where such a fencing would inclose its switches so as to endanger its employees in performance of their duties, or where such

fence would work an inconvenience to the public.

3. Railroads ⚎443(1)—Railroads held under evidence not liable for death of mule struck by train at place where railroad was not required to fence track.

Owner *held* not entitled to recover of railroad for death of mule struck by train at a place within the switch limits of railroad in a city, where railroad was not required to fence its track, under evidence not showing operatives of train which struck mule were guilty of any act of negligence.

4. Railroads ⚎441(1)—Owner of mule struck by train where fencing was not required must show railroad's culpatory negligence.

It being shown that railroad was not required to fence its track at place where mule was struck by train, owner was required to show that those in charge of engine were guilty of culpatory negligence before he would be entitled to recover.

Graves, J., dissenting.

Appeal from Grimes County Court; Ralph W. Barry, Judge.

Action by G. R. Allen against the International-Great Northern Railroad Company. Judgment for plaintiff in county court on appeal from justice court, and defendant appeals. Reversed and rendered.

T. P. Buffington, of Anderson, for appellant.

S. W. Dean, of Navasota, for appellee.

LANE, J. This suit was filed in a justice court of Grimes county by G. R. Allen against the appellant railroad company, to recover $125.00, the value of one mule the property of the plaintiff, and for $20 attorney's fee. The plaintiff alleged that the operatives of one of the defendant's locomotives and trains negligently ran said locomotive against his mule, thereby causing its death.

Defendant answered by a general denial, and by special plea averred that plaintiff's mule, if struck and killed as alleged by plaintiff, was struck within the switch limits of defendant railroad, within the city limits of the city of Navasota, Tex., and within the corporate limits of said city. Defendant also pleaded the existence of an ordinance of said city which prohibited the running at large of animals within its limits. Judgment was rendered in the justice court for the plaintiff for $145. The cause was carried by appeal to the county court, where the cause was again tried before the court without a jury, and resulted in a judgment in favor of the plaintiff for the sum of $145. From such judgment the railroad company has appealed.

It was shown that the mule was killed within the switch limits of defendant in the city of Navasota, and within the corporate

---

⚎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

limits of said city. It was also shown that the ordinance pleaded by defendant was at the time of the death of the mule in force and effect.

Plaintiff G. R. Allen testified that he did not see the mule struck; that he saw tracks of the mule on the railroad for about 15 or 20 feet from the place where he was struck; that the tracks indicated that the mule was going north. He testified that there was a little curve in the railroad at the point of the accident, but it was a pretty sharp curve.

Martin Allen, son of plaintiff, testified that he did not see the train hit the mule; that he did not see it at all; that he heard a train come through on the night of the accident, but did not hear any stock signals.

Hobbs, the engineer, testified that as he was approaching a curve in the switch limits in Navasota going north, the mule approached from the left side of the track, and that it was so close he could not by any means at hand avoid striking it; that no human could have avoided striking it; that the mule came on the track just a few feet from the engine when he first saw it. He testified that a curve in the track obscured his vision; that the curve was to his right; that he made no effort to stop the train after he saw the mule and before he struck it, as he was too close to it to make any effort to stop; that as he approached the point of the accident the headlight would shine on the outside of the curved track on the left side of the track; that he did not see the mule until just about the time he hit it; that he used all means at his command to keep from hitting the mule; that he did not use air to stop the train because it would have been impossible by doing so to prevent his hitting the mule, as it was so close to the engine when he first saw it.

L. B. Bruton, roadmaster of the defendant, testified as follows:

"The spot where this animal is alleged to have been struck is within the city limits of Navasota. I do not know whether it has ever been out or not. It is within the switching limits. Just from my own experience I do not believe the city, the citizens, would allow that right of way to be fenced at that point. It would not be practicable. One reason it would not be practicable, there is a crossing there every 300 feet, city crossings, I would figure somewhere around 300 feet, separate crossings, and you would have to put cattle guards at each one of those crossings, and the men could not work there. It would interfere with the trainmen in their duties. That is what I am getting at. There are people living along on the side of the track there. If we put a fence there, it would interfere with those people living along that right of way. If we put a fence there, it would interfere in a way with the ingress and egress of those people over there. It would keep them out, unless they tore the fence down. That is the way they usually do it. The fencing of the right of way would prevent the servants and employees of the railroad from performing their duties."

Again:

"The north end of this switch intersected the main line down near the depot. I believe the south end intersected the main line a little east of the negro schoolhouse. That is known as a passing track. It is within the switching limits. Switching is done on those tracks to a great extent. It would be impracticable to fence at least both sides of that railroad track. Such a thing would certainly interfere with the workmen in their duties."

H. N. Sandel, local agent of defendant, testified that the point of the accident was within the switch limits; that the fencing of the right of way at that point would prevent the handling of business and would hinder ingress and egress of residents of the city to and from their homes; that it would be impracticable to the service to be handled like it should be handled with the tracks fenced. Testifying further, the witness said:

"In this particular locality where this mule was alleged to have been struck there are residences on the east side of the track. Most of the people that live in those houses go to and from their homes crossing this track. If the railroad fenced its right of way, it would materially interfere with the ingress and egress to their homes. If this track was fenced within the switching limits, it would interfere with the servants and employees of the International-Great Northern Railroad in performing their duties."

Appellant insists that the judgment should be reversed and judgment here rendered for it, because (1) the undisputed evidence shows that the plaintiff's mule was, at the time it was struck, running at large in the city of Navasota in violation of the city ordinance, and there was no evidence showing any act of negligence on the part of those in charge of the engine which struck the mule; and (2) because there was no evidence showing negligence on the part of those in charge of said engine, and because the undisputed evidence shows that the mule was struck and killed within the switch limits of the defendant in the city of Navasota, and within the corporate limits of said city, where defendant was not required or permitted to fence its track.

We overrule the first ground urged by appellant as cause for a reversal. Article 4528, Sayles Civil Statutes of 1897, provided that every railroad company should be liable to the owner for the value of stock killed or injured by the locomotive and cars of such railroad company in running over their respective railways, but if such company shall fence its railway they shall only be liable in cases of injury resulting from want of ordinary care. Before the amendment of said article in 1905, our courts uniformly held that if stock go upon a railroad track

at a point where by law they are prohibited from running at large, the railway company would not be liable in damages for their injury by a moving train, if its employees used such care, after the danger becomes known, as a prudent man would under the same or similar circumstances, to avoid the injury. H. & T. C. Ry. v. Smith, 52 Tex. 178; H. & T. C. Ry. v. Sympkins, 54 Tex. 618, 38 Am. Rep. 632; H. & T. C. Ry. v. Richards, 59 Tex. 377; I & G. N. Ry. v. Cocke, 64 Tex. 151; Railway Company v. Dunham, 68 Tex. 231, 4 S. W. 472, 2 Am. St. Rep. 484; Fort Worth & R. G. Ry. v. Hudgens, 43 Tex. Civ. App. 201, 94 S. W. 378.

But the article mentioned was amended in 1905 and is now article 6402, Revised Civil Statutes of 1925. It was amended by adding a proviso thereto as follows:

"Such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets and cattle."

[1] Since the amendment of the law mentioned was made, our Supreme Court has held that railroad companies are not relieved, by adoption of the stock law, from liability for stock killed by their trains at a point where they could fence their tracks and have not done so. T. & P. Ry. v. Webb, 102 Tex. 210, 114 S. W. 1174.

We are now brought to a consideration of the second ground urged by appellant for a reversal of the judgment and the rendition of one in its favor.

[2] It is well settled that railway companies are not liable for injuries to stock struck by its engines and cars, beyond ordinary care, at a place where it is not permitted to fence its track, or where such fencing would inclose its switches so as to endanger its employees in performance of their duties, or where such fence would work an inconvenience to the public. Fort Worth & Denver Ry. v. Hodge, 58 Tex. Civ. App. 540, 125 S. W. 350; Texas Central Ry. v. Hico Oil Mill, 59 Tex. Civ. App. 330, 126 S. W. 627; Louterstein v. G. H. & S. A. Ry. (Tex. Civ. App.) 144 S. W. 310.

[3] We all agree with appellant that the undisputed evidence shows that appellee's mule was struck at a place within the switch limits of appellant in the city of Navasota, a point where appellant was not required to fence its track, and a majority agree that there was no evidence showing that appellant's employees in charge of its engine which struck the mule were guilty of any act of negligence in striking the mule.

[4] It being shown that appellant was not required to fence its track at the place of the accident, it devolved upon appellee to show by the evidence that those in charge of the engine were guilty of culpatory negli-

gence before he would be entitled to a recovery. I. & G. N. Ry. v. Cocke, 64 Tex. 151; Ry. Co. v. Hudson, 77 Tex. 494, 14 S. W. 158.

A majority having reached the conclusions above expressed and finding that the case has been fully developed, it becomes our duty to reverse the judgment of the trial court and to here render judgment for appellant, and it is accordingly so ordered.

Justice GRAVES dissents from the order of rendition, thinking instead that the cause should be remanded for insufficiency of the evidence, to support the judgment.

Reversed and rendered.