MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V. D. H. BYRD.

Decided January 20, 1910.

**1.—Railway—Killing Stock.**

In case of a horse killed by a railway train in an incorporated town, at a point where defendant could not fence its road and where it was unlawful for such stock to be at large, the evidence is considered and held insufficient to show negligence of defendant causing the injury.

Vol. LVIII Civil—39.

**2.—Same—Fast Running—Causal Connection.**

If the train was running faster than permitted by the town ordinances, this could not have been inferred to have caused the injury to stock struck by it, in the absence of any evidence as to the circumstances under which it was struck.

**3.—Same—Stock Unlawfully at Large.**

At a point where the animal killed was unlawfully at large, there was no duty of outlook to discover its presence, nor inference of negligence from the fact that it might have been discovered in time to avoid striking it.

Appeal from the County Court of Hopkins County. Tried below before Hon. F. W. Patterson.

*Coke, Miller & Coke* and *L. L. Wood;* for appellant, cited: Chicago, R. I. & G. Ry. Co. v. Latham, 53 Texas Civ. App., 210; Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451; International & G. N. R. Co. v. Cocke, 64 Texas, 151; International & G. N. R. Co. v. Dunham, 68 Texas, 231; Frazer v. Bedford, 66 S. W., 573; Missouri, K. & T. Ry. Co. v. Tolbert, 100 Texas, 483; Texas & P. R. Co. v. Webb, 114 S. W., 1170; Acts of Legislature 1905, sec. 20a, p. 226.

*J. M. Melson,* for appellee, cited: Texas & P. Ry. Co. v. Webb, 114 S. W., 1171.

WILLSON, CHIEF JUSTICE.—Appellee recovered a judgment against appellant for the sum of $125 as the value of a horse belonging to the former alleged to have been negligently killed by the latter in the operation of one of its trains within the corporate limits of the town of Sulphur Springs. The horse was killed, as found by the trial court, at a point on appellant's line of railroad it was not required to have fenced, between League Street, in said town, and Moore Avenue, the street nearest to League Street on the east and running parallel with it.

It is reasonably certain from the evidence that the horse was killed by one of appellant's eastbound trains at some hour not shown by the record during a night in September, 1908, but as no one saw the train strike him, it is only by inferences from the testimony that the circumstances surrounding the accident can be determined. Appellee testified that when he last saw the horse alive he was in his lot, near and north of appellant's line of railroad and near and east of League Street. He found the horse dead in a cut at a point about six feet south of the track of said railroad and seventy or eighty feet east of the point where appellant's track crossed League Street. Appellee further testified: "I saw his (the horse's) tracks on the railroad right at the crossing. I saw where he scrambled to get off the railroad track, but I never saw his tracks up to where he was lying. From where I first saw the horse's tracks I could not tell from the tracks he made as to whether he was running, but the tracks just dug in the ground and I suppose it was where the engine struck him." It was shown that from the place where the horse was found dead to a point more than 500 yards west of same, appellant's track

was straight and that the view of operatives of its trains going east from that point to the place where the animal was found dead was wholly unobstructed. An ordinance of the town of Sulphur Springs made it unlawful to run a steam engine on a railroad within its limits at a greater rate of speed than six miles per hour. A witness testified that a train moving at the rate of six miles per hour striking a horse would not knock him ten feet from the side of the track, "But I suppose," he said, "It might knock him off five feet to one side, as five feet would be a small distance. Or," he added, "It might catch the animal on the pilot of the engine, which is three or four feet elevation, and the animal would fall off the side of the track five feet." When found, the horse's hind legs were broken just above the hocks, and his neck was broken. The findings of the trial court, made the basis of his judgment, that appellant was guilty of negligence in that it was operating within the corporate limits of said town in violation of said ordinance, at a greater rate of speed than six miles per hour, the train that killed the horse, and that such negligence was the proximate cause of the horse's death, are challenged as being without support in the evidence. If it should be conceded that the evidence was sufficient to support the finding that the train which struck the horse was being operated at a speed in violation of the ordinance, we think it was insufficient to support the finding that the death of the animal was the result, proximately, of the violation of that ordinance. As was said in Railway Co. v. Latham, 115 S. W., 891, "If the engineer was guilty of negligence in running the train at the speed it was run . . . then in order to determine that such negligence was the proximate cause of the accident, it would be necessary to first find that the animal was on the track under such circumstances as would support the conclusion that the accident was the natural and probable consequence of such negligence, and that an accident of that character ought reasonably have been foreseen as such a consequence in the light of attending circumstances. Texas & P. Ry. Co. v. Bigham, 90 Texas, 223, 38 S. W., 162. Whether there was any causal connection between the negligence of the defendant found by the court and the accident is left wholly to conjecture, and, in the absence of evidence to support it, such a connection can no more be presumed than negligence can be presumed without proof to support it. Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451, 84 S. W., 1049." There is no evidence in the record before us showing when and under what circumstances the horse got upon appellant's track, and there is no evidence tending to show that its employes in charge of the train which killed the horse ever discovered him to be on the track. By the terms of an ordinance in force in said town it was unlawful for the horse to be at large at the place where he was killed, and therefore appellant's said employes not only did not owe appellee the duty to keep a lookout for the animal, but had a right to assume no such animal was at large at said place. International & G. N. Ry. Co. v. Cocke, 64 Texas, 154. As they did not owe such a duty, it should not be presumed from the fact that the track was straight and their view unobstructed that they discovered him upon the track. And, if such a

presumption could be indulged, it could not be made the basis of a further presumption that said employes discovered the animal to be on the track in time by the use of due care to avoid injuring him. The animal being at the time in the position of a trespasser on its track, notwithstanding appellant may have been negligent in operating its train at too great a speed, it would not be liable for the death of the horse if its employes did not discover him to be in danger from the train in time to avoid injuring him in its operation. Missouri, K. & T. Ry. Co. v. Russell, 43 S. W., 576. In other words, the horse being a trespasser on its track, appellant owed to appellee no duty with reference to him until its employes discovered the animal to be in a place where, reasonably, he might be expected to be injured by the operation of the train in the manner they operated it. The testimony failing to show that said employes discovered the horse to be in such a place, it failed to show appellant to owe appellee a duty with regard to him, and hence, failed to show a liability on the part of appellant to appellee. In the absence of a duty violated there can be no liability on the ground of negligence.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*