### F. M. MADDOX v. THE STATE.

#### No. 3387. Decided February 10, 1915.

**1.—Murder—Manslaughter — Evidence—Temporary Insanity — Cocaine — Presumption.**

Where, upon trial of murder, the defendant claimed among other defenses the recent use of cocaine administered to him by the deceased and which caused the temporary insanity of the defendant, there was no error in not permitting the defendant to have witnesses to testify that they were acquainted with deceased and knew that he used cocaine and that at the time of the homicide when he induced defendant to take a drink of whisky which contained cocaine, and long prior thereto that the deceased was habitually addicted to the use of cocaine; defendant claiming that this testimony would aid the jury in forming some correct conclusion as to the amount and quantity of cocaine contained in the whisky given to the defendant by the deceased, and would throw some light on the issue as to whether a sufficient quantity of cocaine was administered to the defendant to produce the mental condition upon the part of the defendant. Davidson, Judge, dissenting.

**2.—Same—Rule Stated—Presumption of Fact.**

The requirement that the logical inference styled a presumption of fact should be a strong, natural and immediate one brings as a corollary that no inference can be based upon a fact the existence of which itself rests upon a prior inference. In other words, there can be no presumption upon a presumption. Following House v. State, 15 Texas Crim. App., 522.

**3.—Same—Self-defense—Charge of Court—Abandonment of Difficulty.**

Upon trial of murder, an exception to the court's charge on self-defense that the court erred in not instructing the jury that if the fatal wound was inflicted while the defendant was acting in self-defense, the further inflicting of wounds after the necessity thereof had ceased and after deceased had abandoned the difficulty would not impair the defendant's right of self-defense was not well taken, as such is not the law. Besides, the bill of exceptions was defective. Davidson, Judge, dissenting.

#### 4.—Same—Rule Stated—Other Wounds.

The law is that the accused has no right to pursue and inflict other wounds after his adversary flees, and if he does so and death is hastened or contributed to in any sense by the additional wounds, the accused would be guilty of some grade of offense. Following Williams v. State, 2 Texas Crim. App., 271, and other cases.

#### 5.—Same—Rule Stated—Self-defense—Abandonment of Difficulty.

No one can pursue another when he knows his adversary has abandoned the difficulty and retreated with no intention of renewing the difficulty and inflict other wounds on him. His right to act in self-defense ceases when he knows all danger to him is over, and he is criminally liable for all acts he commits subsequent to that time; although he might be guilty of no higher grade of offense than aggravated assault; but defendant did not except to the charge on that ground, and there was no error under Article 743, Code Criminal Procedure. Davidson, Judge, dissenting.

#### 6.—Same—Requested Charges.

Where appellant did not brief his bills as to the court's failure to give requested charges, this court will not review the same. However, there was no error, as the requested charges were contained in the court's main charge.

#### 7.—Same—Drunkenness—Drugging Whisky—Evidence.

Upon trial of murder and a conviction of manslaughter, the fact that deceased was drunk on the morning before the homicide would be immaterial, as would also be testimony that the deceased put a drug in a bottle of whisky, as this was not a contested issue.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. R. B. Seay.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*A. S. Baskett,* for appellant.—On question of the court's refusal to admit testimony that deceased was addicted to the habitual and excessive use of cocaine, etc.: Good v. State, 18 Texas Crim. App., 39; Hobbs v. State, 16 id., 517; Leggett v. State, 21 id., 382; Sherar v. State, 30 id., 349; Hill v. State, 52 Texas Crim. Rep., 241; Scott v. State, 56 Miss., 287.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was indicted, charged with murder, and when tried was convicted of manslaughter, and his punishment assessed at four years confinement in the State penitentiary.

The facts show that appellant cut and killed Charles Colson on the night of the 6th of July of last year. The evidence would further show without conflict that appellant came from his home that night to a moving picture show, and after visiting the show was on his way home when he met Colson. They engaged in a conversation, and while walking along Colson asked appellant if he would take a drink with him, and upon appellant stating he would, Colson pulled a bottle of whisky

out of his pocket and appellant took a drink out of the bottle. The evidence would further justify a finding that in a few minutes after taking the drink of whisky appellant's throat and tongue began to have a numb or dead feeling, when he asked Colson what was the matter with the whisky, and Colson replied it had morphine or coke in it. Appellant says he asked him, "Do you mean cocaine?" and Colson replied, "Yes," and when asked what he meant by giving one whisky with cocaine in it, Colson replied, "I thought you were a cocaine fiend, too." Appellant says he told Colson he was mistaken, and Colson replied, "It won't hurt you," and shortly thereafter asked if he would have another drink, appellant declining. To this much of the testimony there is but little, if any, conflict, but from this point there is quite a variance.

The State's witness W. L. Moulder testifies he is a driver for the Dallas Transfer Company, and he saw a part of the difficulty near the transfer barns. He states he saw the parties standing near one of the barns, and appellant said something about there being morphine in the whisky, and Colson replied it did not make any difference; that appellant then struck deceased, and deceased began backing, threw up his hands and told appellant to let him alone. That appellant kept backing Colson until Colson backed into barn No. 2; that he saw Colson turn as if to run, and appellant struck him in the back; that he saw appellant strike deceased several blows. That Colson never struck appellant at all, but held up his hands and told him to let him alone. Witness says he went in the barn and saw Colson; that he was not then dead, but died in about two or three minutes; that he saw no knife in deceased's possession nor none lying around there.

Frank McDonald says he was sitting on the curb near transfer barn No. 2 when he first saw the two men; that they were then about one hundred and fifty feet from him, and were talking and quarreling, but he could not understand what they said; that deceased started toward witness, and to use his own language witness testified: "and the other man, Maddox, apparently grabbed him by the coat, and pulled him back; Colson started again toward me, and Maddox was hitting him with his fist, that is, he was striking at him, anyway, and when they got down to where I was—you see I was on the curb and Colson was coming on toward me and Maddox was striking him. I stepped out of the way, then when they came to the curb, they started back into the street again. No, up to that time I had not heard anything that passed between them that I could understand. Well, they passed into the street again, towards the center, and went down towards the barn door, and went into the barn. Colson was backing backwards some of the time, and some of the time facing him. All I could see Colson doing was holding up his hands and warding off these blows, as near as I could see. They went into the barn No. 2. I stayed out there on the sidewalk. Maddox came out of the barn. I don't suppose it was over two minutes after he went into the barn. I heard him say,

'Why don't you quit fooling with me?' He then went into a saloon there, which was about fifty or sixty feet from barn No. 2. I then went in the barn and when I found that he was hurt, I came out of the barn. When I went into the barn where Colson was, he was alive. I do not know how long he lived. He was lying on his back and bleeding on his left side; I could see the blood coming through his shirt. I then went up to the saloon where Maddox was. I heard him talking over the phone. He says, 'I have cut hell out of a fellow, I am in jail, come down and get me out. I have cut hell out of a son-of-a-bitch, I am in jail, come down and get me out.' He then went down about fifty feet on the other side of the saloon, where there is a lot where Hurst keeps horses and cows. He went down towards Mc-Kinney Avenue. No, I did not see Colson strike Maddox."

Thus it is seen that the State's case is that appellant becoming angry at deceased giving him whisky with cocaine in it, while deceased was trying to get away from him, pursued him, cutting him until deceased fell. That deceased at no time struck or attempted to strike appellant.

Appellant's testimony presents two lines of defense: temporary insanity, produced by drinking the whisky with cocaine in it, and self-defense. He testified: That as he was on his way home from the moving picture show he met deceased, who said: " 'Hello, friend, where are you going?' and I told him, 'I am going home.' He said he was going that way and walked along with me about fifteen feet, and he says, 'Will you take a drink with me?' and I says, 'I would not mind having one.' I thought he was going to take me to the saloon and have a drink, but he pulled a bottle of whisky from his pocket and handed it to me, and I taken one. I took about two swallows of whisky out of the bottle of whisky which he gave me, and then I handed the bottle back to him and we went straight on down Griffin Street. When we had gone about fifteen or twenty feet after taking the drink out of the bottle, my tongue and my throat became numb and dead, and I asked him what in the world was the matter with that whisky, and he said, 'It had coke in it,' and I said, 'Do you mean cocaine?' and he said, 'Yes.' I asked him what he meant by giving me whisky that had cocaine in it, and he said, 'I thought you was one, too,' and I said, 'You are mistaken, I am not,' and he said, 'It won't hurt you.' We then went on down Griffin Street where it crosses the T. & P. Railroad, and he said, 'Have another one,' and held the bottle out to me, and I refused to take another one. I thought it was a mighty dirty thing, giving me whisky with cocaine in it. When he told me it had cocaine in it, it scared me, because I did not know what cocaine might do for me. We crossed the T. & P. tracks and went on past Patterson Avenue toward Camp Street. After we got to Camp Street my head commenced to swim. When we got to Camp Street we turned off of Griffin Street down Camp Street. The man was walking along with me, and he turned on off to Camp Street with me. My head felt queer and my tongue had a funny feeling. We went on out Camp Street towards

Akard Street. We reached the first livery stable on Camp Street before I had any trouble with this man. We were talking about him giving me whisky with cocaine in it. I asked him what he wanted to give me whisky with cocaine in it for, and he said, 'I thought you was one, too,' and I told him it was a damn dirty trick, and he slapped me. At the time he slapped me, my head was already swimming, and my tongue and throat had a dead feeling, I felt peculiar. When he slapped me, I hit at him. He then got out his knife, and I got out mine, and after that he was cutting at me with his knife, and I was cutting at him; that is as far as I remember. No, I do not remember cutting him." He further testified he did not remember anything after that until the next morning, when he awoke in jail; that his head was then swimming, he had an awful headache, and his tongue and mouth did not feel right— that his mouth and throat felt dry, and his throat was burning.

Appellant's father testified that he got word that night his son was in jail, and went to see, and the first thing appellant said was, "Pa, have you come after me?" that he spoke to appellant and said, "Frank, do you know you have killed a man," and appellant replied, "I never killed anybody—a man tried to kill me, he gave me some dope." That he was in the jail talking to appellant about five or ten minutes; that appellant's face was red and his eyes looked glassy, and from the way appellant talked and acted in his opinion he was of unsound mind.

Joe Austin, the city detective who arrested appellant, says he was greatly excited when arrested, and talked freely and loquaciously and his talk was disconnected. That the knife he took off of him had blood on it. The knife was identified and introduced in evidence.

Dr. C. M. Rosser testified and qualified as an expert on insanity. He explained the effect of cocaine on the human system. From the hypothetical question propounded by appellant, based on the evidence offered in his behalf, he testified that in his opinion appellant would be temporarily insane. From the hypothetical question propounded by the State, based on its evidence and theory of the case, the doctor testified that the appellant would not be insane, but his conduct and acts would look like resentment. So the jury would be left to find whether the hypothetical question propounded by the defendant or the State was founded upon the true state of facts as made by the testimony. Deceased was cut a number of times, both in the back and in the chest, one cut penetrating the heart.

In his brief and argument before this court the appellant seemed to place more stress on bill of exceptions No. 2 than he did on the others. In this he shows while Arch Allen and two others were on the witness stand he propounded to them a question in answer to which each would have testified: "He was acquainted with deceased, Charles Colson, and knew that said Charles Colson used cocaine, and at the time of the homicide and long prior thereto, that he was habitually addicted to the use of cocaine." Appellant states in the bill "that the testimony of each of said witnesses was important, material and relevant to the

defense herein, as there is no direct proof as to the amount or quantity of cocaine contained in said whisky, and the defendant desired to show by each of said witnesses that the deceased, Charles Colson, was then and had long been addicted to the excessive use of cocaine, and was habitually addicted to the use thereof, for the reason that said proof would have aided the jury in forming some correct conclusion as to the amount and quantity of cocaine contained in the whisky given to the defendant by the deceased, and would have thrown some light on the issue as to whether a sufficient quantity of cocaine was administered to the defendant to produce the physical and mental condition on the part of the defendant as testified to by the defendant." It is thus seen appellant's reason assigned to the court at the time as to why he erred in not admitting said testimony was that he desired to introduce the evidence that the jury might infer or presume therefrom the amount or quantity of cocaine contained in the whisky, and also that the jury might, from that presumption, further infer or presume whether or not such a quantity of cocaine might produce the mental or physical condition as testified to by defendant. Appellant cites a number of authorities to the effect that "all facts which go to sustain or impeach a hypothesis logically pertinent are admissible in evidence." This is the law beyond question, and therefore it is unnecessary to discuss the authorities cited by appellant in support of the proposition, but such a rule of law has no application to the testimony offered and excluded by the court as shown by this bill. He wanted to show the fact that deceased was an habitual user of cocaine; for what purpose? That the jury might first presume as to the quantity of cocaine probably in the whisky, and from this presumption the jury then presume that such a quantity would probably produce temporary insanity. The text-books on evidence all adhere to the rule laid down by Mr. Chamberlain: "The requirement that the logical inference styled a presumption of fact should be strong, natural and immediate one brings as a corollary the rule that no inference can be based upon a fact the existence of which itself rests upon a prior inference. In other words, there can be no presumption upon a presumption." (Sec. 1029.) This court in the case of House v. State, 15 Texas Crim. App., 522, in an opinion by Judge Hurt, ably and fully discusses this question, and holds one presumption, can not be based upon another presumption, quoting approvingly the text of Burill on Evidence: "Upon this subject the learned author, Mr. Burill, says: 'Rule 3. The evidentiary facts must be all proved, and the existence of none of them can be presumed. This is a fundamental rule, applying without variation to all elementary facts of which the basis of evidence is composed. So far as they are concerned presumption can not be made the ground of presumption. This would be extending the principle of induction or inference far beyond the legitimate limits, and lead to endless multiplication of the sources and chances of error.'"

This rule has always prevailed in this court, such presumption some-

times being referred to as too remote. Also our Supreme Court and. Courts of Civil Appeals follow the same rule of evidence. In the case of M. P. Ry. Co. v. Porter, 73 Texas, 304, on p. 307, that court says: "The only possible way to construct a theory of the case which would entitle plaintiffs to recover is to deduce one presumption from another, and this the law will not permit," citing Lawson Pres. Ev., rule 118, p. 569. See also St. L. S. W. Ry. Co. v. McIntosh, 124 S. W. Rep., 692; M., K. & T. Ry. Co. v. Byrd, 124 S. W. Rep., 738; Moore v. Hanscom, 103 S. W. Rep., 665; Baldwin v. Goldfrank, 88 Texas, 258. In this latter case Chief Justice Gaines wisely states the rule to be: "It seems to us that this would be to build one presumption upon another, which is never allowed. The rule is elementary that a presumption can be legally indulged only when the facts from which the presumption are proved by direct evidence; and that one presumption is not to be adduced from another." For a list of authorities from almost every State in the Union see 16 Cyc., 1051; 22 Am. & Eng. Ency. of Law, 1236; Ency. of Ev., vol. 9, p. 880.

The only other question presented in appellant's brief is, that the court erred in his charge on self-defense. Under this assignment he presents no authorities. At the time the court submitted his charge to appellant's counsel for inspection, the only exception reserved reads as follows: "The defendant excepts to that portion of the charge of the court on the question of abandoning the difficulty, contained in his main charge on page 9 thereof, because it does not make clear to the jury that if the fatal wound had been inflicted while the defendant was acting in his own self-defense, and before the deceased had so abandoned the difficulty, the further inflicting of wounds and injuries after the necessity therefor had ceased and after deceased had abandoned the difficulty would not impair the defendant's right of self-defense." The exception reserved, it will be noticed, is that the court erred in not instructing the jury that if the fatal wound was inflicted while the defendant was acting in self-defense, the further inflicting of wounds after the necessity thereof had ceased and after deceased had abandoned the difficulty would not impair the defendant's right of self-defense. Had the court so instructed the jury it would not have been the law, for it is not the law of this State, that if one inflict a fatal wound, and his adversary flees, and he still pursues him, the right of self-defense would remain unimpaired. The law is, he has no right to pursue and inflict other wounds, and if he does do so, and death is hastened, or contributed to in any sense by the additional wounds, the defendant would be guilty of some grade of offense. In the cases of Williams v. State, 2 Texas Crim. App., 271, and Hart v. State, 15 Texas Crim. App., 202, the rule is clearly laid down: That if the person would have died from some other cause already operating, yet if the wound hastened the termination of life, this is enough. (Bordeaux v. State, 58 Texas Crim. Rep., 61; St. Clair v. State, 49 Texas Crim. Rep., 479; Riley v. State, 81 S. W. Rep., 711.) No one can

pursue another when he knows his adversary has abandoned the difficulty and retreated with no intention of renewing the difficulty, and inflict other wounds on him. His right to act in self-defense ceases when he knows all danger to him is over, and he is criminally liable for all acts he commits subsequent to that time. If the additional wounds did not hasten nor contribute to the death of his adversary, he might be guilty of no higher grade of offense than aggravated assault, but certainly he would not be entitled to an acquittal on the ground of self-defense, when he knew that all danger to him was passed, when he inflicted the wounds after his adversary had abandoned the difficulty and retreated with no intention of renewing the difficulty. The exception to the charge was not well taken, and the court did not err in overruling it. Had the appellant excepted to the charge on the ground that same did not instruct the jury of what grade of offense appellant would be guilty under such circumstances, there might have been some merit in his contention, but he made no such exception or objection to the charge either in the objections to the charge or in the motion for a new trial, and under article 743 as amended we can not make such objection for him and act thereon. In addition to this, as appellant was adjudged guilty of manslaughter only, such objection, if it had been made, would not present serious error. It might do so had he been found guilty of murder.

Appellant does not brief his other bills or failure to give the special charges requested. However, we have read the other bills, and they present no error. The court's charge on insanity is a fair presentation of that issue, and not objected to by appellant, therefore it was not necessary to give the special charge requested. One of the special charges was given by the court, and the others virtually embraced in the court's charge.

The fact that deceased was drunk on the morning before the homicide would be material to no issue in the case, and the court did not err in sustaining objections to that testimony. Nor would the testimony of L. E. Payne to the effect that a few weeks before the homicide he saw deceased put a drug in a bottle of whisky be material. The evidence for the State and appellant proved that deceased gave appellant a drink of whisky with a drug in it on the night of the homicide. That was not a contested issue.

The judgment is affirmed.    *Affirmed.*

DAVIDSON, Judge (dissenting).—On a previous day of the term the judgment herein was affirmed. At the time I entered my dissent. I purpose now to give a few reasons why this judgment should not have been affirmed. I deem it unnecessary to go into a detailed statement of the facts. Some of the evidence is not stated in majority opinion, but with reference to what I have to say I shall not regard those omissions as material.

The theory of the State was that defendant was the aggressive party

and cut the deceased fatally with a knife. There were three theories presented by the evidence favorable to the defendant: first, the abandonment of the difficulty; second, insanity produced by cocaine administered by deceased through the whisky given him by deceased; third, self-defense. The court charged upon self-defense and abandonment of the difficulty. Charging upon abandonment he instructed the jury, in substance, that if there was an abandonment of the difficulty and a renewal of it by appellant, it would deprive him of the right of self-defense, but failed to inform the jury what would be his relation to the case under the law growing out of the subsequent difficulty, self-defense being in the first. If the first difficulty ceased, and appellant renewed it, he would not be responsible under the first difficulty if the jury should find in his favor on self-defense. The court did not instruct the jury to that effect. If the fatal wounds were inflicted in the first difficulty, and if self-defense was found on this state of facts, then the second difficulty could only be viewed in the light of the facts occurring upon the renewed difficulty. If he inflicted the fatal wounds in the second difficulty, he being the attacking party, he would not be entitled to self-defense viewed from that standpoint, but under those circumstances he might be guilty of manslaughter or some grade of assault. If the wounds inflicted in second difficulty were of a serious nature but not fatal, he would be only guilty of aggravated assault. If the wounds were not serious, then he might not be guilty of more than simple assault. The evidence does not show positively whether the fatal wounds were or were not inflicted in the second difficulty. Most of the fighting occurred before the separation of the parties. It is a matter of deduction, presumption or inference as to what occurred in the second difficulty. Appellant may have used his knife in the second difficulty with fatal effect, or he may not have used it with any such result. He may not have used it at all, or he may have used it only in inflicting flesh wounds. These were matters to be deduced from the circumstances of the case, and the jury should have been informed as to the law governing such condition, but they were not and appellant reserved his exception. The majority opinion seems to base the conclusion of no error on the theory that appellant hastened or may have hastened the death of deceased in the renewed difficulty. How this doctrine could apply to this case is not clear to my mind. If the law of self-defense was in his favor in the first difficulty, he would be justified in what he did. This was impaired by the doctrine of hastening the death in the subsequent trouble, when he may have been in the wrong, or thought he may have been justified in first trouble. If he was wrong in the first difficulty, the doctrine of self-defense would not be in his favor. If he was right in the first difficulty, under the law of self-defense he would be guilty of no wrong legally speaking, because he would be justified. The doctrine of hastening the death by subsequent wounds could not deprive appellant of the right of self-defense in the original difficulty, and hastening his death in the second difficulty

would not apply because he was justified in the first trouble. He could then only be charged with the criminal results growing out of the second difficulty. The right of self-defense is justification and can not be used as a criminative fact, tied to and coupled with criminative acts occurring in another difficulty. I can not altogether agree with the statement of the exception to the charge as quoted in the majority opinion. A part only of the exception is quoted in Judge Harper's opinion in the following language: "The defendant excepts to that portion of the charge of the court on the question of abandoning the difficulty, contained in his main charge on page 9 thereof, because it does not make clear to the jury if the fatal wound had been inflicted while the defendant was acting in his own self-defense, and before the deceased had so abandoned the difficulty, the further inflicting of wounds and injuries after the necessity therefor had ceased and after deceased had abandoned the difficulty would not impair the defendant's right of self-defense." This is the quotation in the original opinion which omits a part of the exception found in the record, but this exception as quoted by Judge Harper is well taken, because if defendant had the right of self-defense originally and the abandonment occurred, then his right of self-defense ceased from that time afterward. If it was complete up to abandonment of the difficulty, of course if he renewed the trouble afterwards he could not plead self-defense in the first difficulty for what he did later, but his right of self-defense would not be impaired in the first difficulty by what occurred in the second difficulty. But the exception to the charge did not stop with the quotation made by Judge Harper; it went farther. In the exception taken, and in the same clause of the exception in addition to what Judge Harper quotes, as shown above, this occurs: "He furthermore excepts to said portion of said charge because it is further erroneous because it practically tells the jury that the defendant at the time was doing wrongful act, and permits the jury to consider same against the defendant without reference to whether or not the fatal injury had already been inflicted." This puts quite a different light on the matter, and the exception was well taken. I do not purpose further to follow this. I have said enough I think to make it plain, and the exception makes it plain, that the questions were properly presented to the court, and that the court was in error in not instructing the jury as to what the relation of defendant would be to the case and the law under the facts of the renewed difficulty.

On the theory of insanity Judge Harper holds the court was correct and appellant's exception not well taken wherein he refused to permit evidence to the effect that the deceased Colson was a confirmed cocaine fiend, that he had frequently been arrested by the officers for being drunk and under the influence of cocaine, and that he was a confirmed "dope fiend." If it could be shown deceased was a user of cocaine for a considerable length of time and for years as here offered, it was testimony of a most material character. This was pertinent testimony and

went directly to the issue of insanity. . The majority opinion disposes of all these matters on the theory that it was "a presumption based upon a presumption." That doctrine had nothing to do with this case as presented by bills of exception and the testimony. Dr. Rosser, who had served for years as superintendent of the insane asylum at Terrell, an expert in these matters, testified as to the effect of cocaine, and substantially that the continued use of cocaine brought about an enlargement or increased quantity of the medicine taken by the party addicted to its use. If appellant could prove, and the bill of exceptions shows he could, that deceased had been addicted to the use of this drug for several years or quite a long time, that would be a fact, not a presumption. If he could have proved, which he alleges he could, that by the continued use of the drug the percentage of the dose largely increased, this would be a fact, not a presumption. It was a fact uncontroverted that this was the first drink of whisky appellant had ever taken; it was the first dose of cocaine he had ever taken, and out of these facts grew the difficulty. These were not presumptions. With these facts before the jury, the proposition to be determined by Dr. Rosser as an expert was that the dose taken by the confirmed cocaine fiend being larger than one not addicted to it, the result and effect upon the novice would be much greater than it would if he had been addicted to it, therefore more likely to produce insanity in the novice. This would be permissible on the theory of insanity and the opinion of the expert and where the doctrine of "presumption upon presumption" comes under this state of facts I do not understand. Appellant was clearly entitled to this testimony, and had it been before the jury there is no question in the mind of the writer that the verdict would have been more favorable, but whether it was or not, it was a cogent fact to be weighed by the jury favorable to the defendant on insanity. Again, it might have influenced the jury to give defendant two years instead of four years which they gave him. I do not purpose to go into the reasons assigned in the exceptions why the exclusion of this testimony was error. Judge Harper in his opinion only quotes a portion of those; however, the exceptions were very numerous and present the matter from almost every imaginable standpoint. Appellant's contention is correct; he should have had the benefit of this testimony, and not have the case affirmed on the mistaken theory that this testimony was basing "presumptions upon presumptions." The issue was insanity, and the opinion of the expert was sought on a given state of facts, all of which were provable on the theory of insanity. It might be well to state here that testimony is often admissible when the issue is insanity that would not be admissible on other questions outside of and beyond insanity. This has been so thoroughly settled in Texas it ought not to be questioned. I might mention here one instance: the acts and conduct of the defendant under arrest may be used in insanity when undertaken to be used against him on the theory of guilt are clearly non-admissible. Other instances might be cited, but this is sufficient. Burt's case, 38 Texas Crim.

Rep., 397; Tubbs' case, 55 Texas Crim. Rep., 621; Spivey's case, 45 Texas Crim. Rep., 497; Miller's case, 71 S. W. Rep., 20; Cannon's case, 41 Texas Crim. Rep., 486.

I therefore respectfully enter my dissent.