HOUSTON E. & W. T. RY. CO. v. PETERSON. (No. 616.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 1, 1921.)

1. Railroads ⚖⚬443(1)—Evidence held not to show negligence as to mule at crossing.

In an action against a railroad for injuries to plaintiff's mule struck at a crossing, evidence held not to show that the accident was due to defendant railroad's negligence.

2. Railroads ⚖⚬410—Recovery for killing mule at crossing unauthorized without proof of negligence.

Where plaintiff's mule was killed on a public crossing over defendant railroad, it was incumbent on plaintiff to prove that defendant railroad's servants in charge of the train which struck the mule were guilty of negligence.

3. Railroads ⚖⚬443(4)—Evidence held to show killing of mule at public crossing.

Evidence held to show that the crossing at which plaintiff's mule was killed by defendant railroad was a public crossing used by the community as such for years and kept in repair by the railroad in recognition of its public character.

Appeal from Nacogdoches County Court; J. M. Marshall, Judge.

Suit by T. J. Peterson against the Houston East & West Texas Railway Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

A. A. Seale, of Nacogdoches, and McMeans, Garrison & Pollard, of Houston, for appellant.

V. E. Middlebrook, of Nacogdoches, for appellee.

HIGHTOWER, C. J. The appellee, Peterson, sued appellant, Houston East & West Texas Railway Company, in one of the justice courts of Nacogdoches county for the recovery of damages sustained in consequence of alleged negligence on the part of appellant in striking a mule owned by appellee with one of appellant's trains, the amount of damages claimed being $150, and recovered judgment in that court in the sum of $80. Appellant appealed the case to the county court of Nacogdoches county, and upon a trial in that court appellee recovered judgment for the sum of $85, and appellant has appealed to this court.

We sustain the seventh assignment of error found in appellant's brief, under which it is contended, substantially, that the verdict and judgment in favor of appellee is without support in the evidence, in that the evidence fails to show that appellant was guilty of negligence in striking appellee's mule. It is the contention of appellant in this connection that the evidence shows, without dispute, that the appellee's mule, if struck by appellant's train at all, was struck on a public crossing, over appellant's railroad track, and that such being the fact, appellee was required, before he could recover, to show that the mule was negligently struck. This proposition on appellant's part is sound in law, and if the state of the evidence in the record is such as to support the proposition, we have no alternative other than to reverse the judgment.

As a statement under this assignment, we find copied in appellant's brief what purports to be a full statement of all the evidence adduced on the trial of the cause below upon the issue of negligence on the part of appellant, and this statement is not questioned by counsel for appellee, and under the rules of briefing in this court will be accepted as a full statement of the evidence in that connection. It is as follows:

"T. J. Peterson, the plaintiff, being sworn, testified:

"'My name is T. J. Peterson and I live up here about three miles this side of Garrison, there, on what is known as the Peterson hill. I am the plaintiff in this case, and am suing for damages on account of an injury to a mule.

"'I had a young mule that I had just bought and had broke. I first broke him double, and Mr. John Humphreys needed another mule to work on his farm there, and I told him I would let him have another mule, and I told him I would let him have this mule to plow, and he said he would take it; and after he had had him for some weeks, he sent me word that the mule had got hurt on the railroad; that the train had knocked him off, and I went over there to look at the mule. When I saw the mule had several gashes cut on him, and he kind of stood with his back drooped, looked to me like his back had been knocked down, but

---

⚖⚬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

I kind of thought at first that he stood that way on account of the cuts on his legs, and I told Mr. Humphreys. * * *

" 'Q. Now, just tell the jury where the mule got hurt, Mr. Peterson, the place on the railroad, I mean? A. Well, he got knocked into a cattle guard, and it knocked every piece out of the cattle guard. * * *

" 'Mr. Seale, for the defendant: Unless the witness saw this, if the court pleases, he wouldn't know, and we object to it.

" 'Judge Middlebrook, for the plaintiff: All right, then.

" 'Witness: Well, I saw the cattle guard there, and, as I said, every piece was knocked out, and the eight or ten inch post was split, and the mule's back was skinned from his wethers back to his hips. I noticed the hair there on the cattle guard; it was on every piece, and every one of the scantlings in the cattle guard was knocked out, and some of them broke in two.

" 'What direction was that train going that struck that mule?

" 'Mr. Seale, for the defendant: We object to that, unless he knows.

" 'Judge Middlebrook, for the plaintiff: Well, he never saw it.

" 'Mr. Seale, for the defendant: We object to it, then.

" 'Court: If the witness knows he can answer the question.

" 'Mr. Seale, for the defendant: The defendant excepts to the ruling of the court.

" 'Witness:

" 'As to what direction the train was going, I could tell that only by the mule's track and the way the cattle guard was knocked out. The mule's track was over across the road, and I could see there where it started to run across the track, and then I could not see any tracks, and the next sign I saw there was the cattle guard knocked out like it was. The cattle guard was knocked out west from the track coming this way.

" 'I know that track along there, as to whether it is an open track, as I have lived there a long time and have known the track ever since it was put there. Right along there where the mule was struck on to the cattle guard is a tolerably straight track for a good little piece, I reckon for 50 or 75 or maybe 100 yards, it is a little upgrade.

" 'As to whether the mule was outside running on the commons or in the pasture, I really don't know that I could answer about that, but Mr. Humphreys has a gate there at his lot, opening out into his pasture, and down there about 100 or 150 yards further is a gate opening outside, but I don't know whether it was open or not. The mule was in charge of Mr. Humphreys at the time it got hurt; he was still working it then.

" 'Q. Now, taking that track there, Mr. Peterson, upgrade or uphill there, was that track a clear track for a long enough distance for a train to have been stopped after the mule was seen where you saw the track there? A. Yes, sir. * * *

" 'Mr. Seale, for the defendant: Now, we object to that, if the court please, as this witness has not qualified as an expert along that line.

" 'Judge Middlebrook, for the plaintiff: I

don't think it would take an expert to answer that question.

" 'Court: I will overrule the objection.

" 'Mr. Seale, for the defendant: The defendant excepts to the ruling of the court. * * *'

"Cross-examination:

" 'I have stated how the cattle guard was knocked and about the tracks, and from the appearances there I would say the train was coming this way. The track on the other side showed the mule was running and that he tried to cross the track. That was a substantial cattle guard there, it was well made. It was properly made, I reckon, and it was substantial. That was a public road there, a crossing at a public road, and that crossing had been there ever since that railroad had been there, but I guess some 30-odd years, and the crossing had been there all of the time, and it had been used all of the time by people crossing there. This accident happened in the nighttime. I found out about it the next day, and then I went down there to make some investigation. I never saw the accident when it happened. I don't know anything about how it happened except from the signs I saw there. The cattle guard was in good shape. The mule's tracks showed the mule was trying to cross the track when he was hit.'

"John Humphreys, being sworn as a witness for the plaintiff, testified:

" 'I was working the mule at the time he got hurt. That night I fed him at the lot, with the other stock, as I usually did, and I have a pasture there above the lot, and I always leave that gate open so they can get out in the pasture when they get through eating. I had another gate there that opens towards the railroad, about 100 or 150 yards from the place where I fed them, and that must have been open, too. That was the gate toward the railroad, and in some way it got open or was left open and the mules got outside. That put them outside there in the lane where he was struck. That was there close to my house.

" 'That road in there that Mr. Peterson described to Mr. Seale is not a public road; it is just a community road. That is a pretty clear track along there on the railroad, and I would think an engineer in his cab along there could see down the track or up it, owing to which way he was going, for 75 or 100 yards. There is a curve there below the crossing, but I would think that he could see 75 or 80 yards. That's upgrade there, coming this way; that's the Fritz hill, you know, and they stall there if they have any sort of a load, and double over. I have seen double-headers stall there.

" 'Q. Now, a fellow running a train up that grade there, coming this way, in about what distance could he stop that train?

" 'Mr. Seale, for the defendant: The defendant objects to that; we think it would take a practical engineer to answer that question, one who is qualified along that line.

" 'Judge Middlebrook, for the plaintiff: We think any common sense fellow could answer that as well as a practical engineer.

" 'Court: The objection is overruled. I think he could tell what he thinks about it.

" 'Mr. Seale, for the defendant: He is not qualified to answer the question, if the court please.

"'Judge Middlebrook, for the plaintiff: I am just asking his judgment about it.

"'Court: The objection is overruled.

"'Mr. Seale, for the defendant: The defendant excepts.

"'Witness: From where those tracks were seen, or where the .mule was, I think he could have been seen far enough to have stopped the train before it reached the point where it struck him; I have seen them stop in a shorter distance than that. That is a public crossing there across the railroad, and people cross there, going into and out of that settlement.'

"Cross-examination: .

"'That is a public crossing there, as I said, where people cross the railroad track. That road goes into the community and on up to the schoolhouse, and it was there, I believe, before the railroad was there. Of course, it has been there ever since the railroad has been there. It is still a public crossing and used by the people as such and has always been. It was in good shape at the time of the accident, and the cattle guards were, too. That pasture that the mule got out of that night was my private pasture.'"

[1] From the foregoing statement of the evidence, it is clear that there was no showing made by appellee as to the circumstances attending the striking of his mule by appellant's train. No person saw the accident, and there is not the slightest circumstance to indicate how it occurred, other than the testimony which shows, circumstantially, that the mule was on the crossing when struck, and this is based upon the fact that the mule's tracks were seen in the road going over the crossing; but as to what time the mule started over this crossing, with reference to the approach of the train thereto, or as to how the train was operated or managed as it approached the crossing at the time of the accident, there is no testimony whatever. It may be that appellant's employés in charge of the engine were guilty of negligence in doing something that they should not have done or in failing to do something that they should have done, but this record is silent on the point.

[2] Since it is clear from the evidence that the mule was killed on a public crossing over appellant's road, it was incumbent upon appellee to prove that appellant's servants in charge of the train which struck the mule, were guilty of negligence, and not having done so, the verdict and judgment cannot stand. G., C. & S. F. Ry. Co. v. Anson, 101 Tex. 198, 105 S. W. 989; Henry v. M., K. & T. Ry. Co., 65 S. W. 644; St. L., B. & M. Ry. Co. v. Knowles, 180 S. W. 1147; Railway Co. v. Byrd, 58 Tex. Civ. App. 609, 124 S. W. 738.

[3] Counsel in his brief does not question the rule that before an owner of stock can recover damages against a railroad company for the negligent killing or injuring of stock at a public crossing over its road, proof of negligence on the part of the railroad company must be made, but in this connection counsel for appellee suggests that the crossing at which this mule was injured was not a public crossing, in contemplation of the decisions of this state, for the reason that the road leading over the railroad track at that point was only a community road, or rather, as we gather from his contention, was not a road established by legal proceedings. From the evidence above quoted, it is too plain for argument that the crossing on which this mule was struck was a public crossing, as that term is used in the decisions of this state in like cases; that it was kept up and was in proper repair at the time of the injury; that the cattle guards themselves were kept up and in proper repair; and that this crossing had existed for many years, and, as one of the witnesses suggests, the road itself was there before the railroad came along. We do not understand that by the expression "public road" or "public crossing," as used in the decisions of this state, it is meant that the road over a railroad track would have to be laid out in accordance with the statute, under directions of the commissioners' court; but, on the contrary, we understand that any road derives and takes its character from the nature of the use made of it by the public. It is manifest, from the undisputed evidence in this case, that the crossing in question has been used by the public in that community for a great number of years, and that, in recognition of the right of the public to its use, the railroad has kept this crossing in repair, so as to be suitable as a crossing for the public. As said by the Supreme Court in the case of Missouri Pacific Railway Co. v. Lee, 70 Tex. 496, 7 S. W. 857:

"The extent of the use of a road determines its character as public or not as a fact. The purpose of the statutes, or the principal ones, imposing duties upon railway companies in running their trains across the public roads, was to protect human life. That necessity would attach to the crossing of every road in fact public, and where the extent of travel made it a duty on the part of the owners of the railway trains to look after the safety of those using the road as a highway. We cannot attach to the word public, in the amended act any other meaning than as including all public roads, whether in law or in fact. We think where the crossing is public, and that fact known to the railway company, that the duty of carefulness arises," etc.

If appellant, in any supposed case, should undertake to deny that the crossing where this mule was injured was a public one, we apprehend that it would have great difficulty in establishing its denial. It is useless to discuss the question at further length.

Appellant strenuously insists that this court should reverse and render the judgment in its favor, since no negligence upon its part was shown in the trial court. We de-

cline to do this, for the reason that we cannot say that it is apparent to us that the case has been fully developed, and that no stronger case could be developed by appellee on another trial. We therefore decline to render judgment in favor of appellant; but, because of a lack of proof of negligence on the present trial, the judgment will be reversed and the cause remanded, and it is so ordered.