## INTERNATIONAL-GREAT NORTHERN R. CO. v. COULTER.

### No. 1924.

Court of Civil Appeals of Texas. Beaumont. April 8, 1930.

Foster & Williams, of Conroe, and Andrews, Streetman, Logue & Mobley, Wm. Streetman, and Jas. E. Kilday, all of Houston, for appellant.

Strode & Pitts, of Conroe, for appellee.

O'QUINN, J.

This suit originated in the justice court, Precinct No. 3, Montgomery County, Tex. Appellee sued appellant for damages in the sum of $150, and for $20 attorney's fees. The damages alleged were for the value of two horses killed by a train of appellant on May 20, 1928. Judgment in the justice court was for appellee for the damages and attorney's fee. The case was appealed to the county court of Montgomery county. Appellee filed no written pleadings in the county court. Appellant filed written answer consisting of a general demurrer, a special exception to the effect that the citation in the justice court (the only pleadings of appellee in the case) was insufficient because it did not state the county in which the accident occurred, a general denial, and special pleas setting up: (a) That the killing of the horses occurred at a place where the railroad was not required or permitted to fence its premises; (b) that the horses were killed within switching limits; and (c) that said horses were killed at a place where the safety of the railroad employees and the convenience of the public required that the railroad be not fenced.

The case was tried to the court without a jury, and judgment rendered for appellee for $150 damages and $20 attorney's fee. From this judgment, appellant has appealed. There is an agreed statement of facts proven on the trial.

Appellant presents two assignments of error. They are:

"First Assignment of Error.

"The trial court erred in rendering judgment herein for the plaintiff, George Coulter, because there are no facts in the evidence that show, or tend to show, any act of negligence on the part of the operatives of defendant's train.

"Second Assignment of Error.

"The trial court erred in rendering judgment herein for plaintiff, George Coulter, because there are no facts in the evidence that show, or tend to show, 'that, even admitting negligence, such negligence was the proximate cause of the damage complained of."

Appellee's counter proposition to the above assignments is:

"Operating a train through a town and over public crossings at a rapid rate of speed and failing to ring the bell or blow the whistle at a place where stock are accustomed to graze and run at large, constitutes negligence and the railroad company is liable for any damages resulting from such negligence."

The evidence, as reflected by the agreed statement of facts, is quite brief. It is:

"Lee Miner testified:

"My name is Lee Miner. I live in Montgomery County, Texas, near the town of Magnolia, and have lived there about 28 years. I worked for the International-Great Northern Railroad Company, as section foreman, for about 25 years.

"I am familiar with the depot and grounds of the International-Great Northern Railroad at Magnolia. The railroad track at Magnolia runs east and west and is straight. There are no obstructions in the way and a person on an engine coming towards Magnolia from the west could see stock on the track at least four or five hundred yards before getting to the depot.

"The International-Great Northern Railroad Company maintains switch tracks at Magnolia, extending both east and west from the depot. There are three railroad tracks there, consisting of the main track, the switch track and loading track. The switch track is about four hundred yards long, extending about two hundred yards each way from said railroad depot. The loading track is about two hundred yards long and it extends about one hundred yards each way from the railroad depot.

"The town of Magnolia has a population of about two hundred people, and there are residences and people live on both sides of the railroad track where the depot is located and for some distance west and east of it. I did not say the horses were struck by the train. A street or road crosses the railroad tracks on both sides of the depot about fifty feet from the depot. The roads or streets run north and south across the railroad at that place and are used by people crossing the railroad tracks. The inhabitants of the town use these streets or roads in going from one part of the town to the other. The main business part of the town is across the street from the depot south of it.

"Stock habitually graze on the right of way of the railroad at Magnolia near the depot and on the west side of it. I knew the mares belonging to the plaintiff that were killed, but do not know the market value of them. They were good stock. One of them Mr. Coulter used as a family horse, driving her to his buggy, but the other he did not use much.

"J. W. Turner testified:

"My name is J. W. Turner. I live in the town of Magnolia, about two hundred and fifty or three hundred feet west of the International-Great Northern Railroad Company's depot, on the north side of the track. I remember about the time Mr. Coulter's two

mares were killed by the train at Magnolia. I heard the train coming; it seemed to be running very fast, and I heard a commotion at the depot and horses running, and looked out to see what it was. I had some horses in the bunch was the reason I looked out. When I looked out the train had passed the depot going east and was running forty or forty-five miles per hour. It did not slacken its speed or stop, and the whistle was not blown nor the bell rung, at least I did not hear any bell or whistle.

"When I looked out I saw that the horses had been struck and I went on down there in just a few minutes. When I got there one of them was dead and the other one died soon afterwards. One of the mares was lying up against the depot and the other one was lying at the south corner of the depot platform. Both of them showed to have just been struck and were struck at the depot of the International-Great Northern Railroad Company at Magnolia early in the morning about sunup. I don't know if there is a market value for mares of that kind at Magnolia or not.

"I did not see the horses killed, but I went out there in about three minutes, not over five minutes, after they had been struck. The horses were killed on the depot grounds at the depot, in the switch limits of Magnolia.

"George Coulter testified:

"I live about one mile from the town of Magnolia in Montgomery County, Texas. I am the plaintiff in this suit. I had two mares killed by being struck by a train on the International-Great Northern Railroad at Magnolia, on or about the 20th day of May, 1928. One of the mares was about eight years old and the other ten or eleven. They were blooded stock, both being sired by very fine sires. There was no market at Magnolia for that kind of animals. I had sold some of the same kind a few years before these were killed, and I got more than I am claiming for these two. The mares were worth to me, for the purposes I used them, at least Seventy Five Dollars each. I would not have sold them for that. They were not for sale. I did not see them killed. I was notified next morning and went down to see them. I told the section foreman to kill the one that was not yet dead. I suppose he killed her. They were killed right at the depot within the switch yards of the railroad at Magnolia.

"I filed a claim against the railroad with the agent at the town of Magnolia for $75.00 apiece for the mares. I filed the claim more than thirty days before I had suit filed in the justice court against the railroad company for the value of said mares, and I employed Strode & Pitts to bring a suit to collect the value of the mares that were killed and I agreed to pay them $20.00 for their services.

A. A. Turney testified:

"My name is A. A. Turney. I am a lawyer and have been in active practice for about three years. I live at Conroe in Montgomery County and am at present county attorney of this county. A fee of Twenty Dollars for prosecuting a suit of this kind for the amount of $84.50 is a reasonable fee and is the usual customary fee in such cases."

It is seen that the accident occurred at a place where appellant was neither required to nor permitted to fence its premises. If it be conceded that operating the train through the town at the rate of speed it did, and failing to ring the bell and to blow the whistle, was negligence, still we do not believe that such negligence was shown to be the proximate cause of the killing of the animals. Proof of negligence without proof that such negligence was the proximate cause of the killing of the animals is not sufficient to support the judgment. It was not shown how the animals were killed, that is, just how the collision of the train with the animals occurred; whether they were seen by the operatives of the train upon the track at such distance from the train as to enable them, by the exercise of proper care, to check the speed of the train and prevent the collision, or whether the animals ran suddenly and unexpectedly upon the track in front of the engine at such time and in such manner as to render it impossible for the operatives of the train to check the same in time to avoid the collision. In other words, it was not shown that operating the train through the town at the rate of speed complained, without blowing the whistle or ringing the bell, over the unfenced track, if conceded to be negligence, was the proximate cause of the killing of the animals, and, since no causal connection between the conceded act of negligence of those operating the train and the killing of appellee's stock is shown, the judgment must be reversed. Payne v. Wittenberg (Tex. Civ. App.) 239 S. W. 224; Railway v. Peterson (Tex. Civ. App.) 227 S. W. 747; Lancaster v. Eidson (Tex. Civ. App.) 234 S. W. 708; Railway v. Atkinson (Tex. Civ. App.) 254 S. W. 1028; Davis v. Wilson (Tex. Civ. App.) 241 S. W. 562; Railway v. Anson, 101 Tex. 198, 105 S. W. 989.

The judgment is reversed, and the cause remanded.