**TEXAS & N. O. R. CO. v. ALLEN.**

No. 12427.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 3, 1952.

Rehearing Denied Oct. 1, 1952.

Keys, Holt, Russell & Keys, Corpus Christi, for appellant.

Ward & Brown, Corpus Christi, for appellee.

NORVELL, Justice.

The suit is one for damages occasioned by the death of a mare as a result of being struck by defendant's locomotive. The petition alleged that the defendant was liable for the death of the animal because of negligence. However, it appears from the trial court's findings and conclusions that the judgment against the defendant was based upon the provisions of Article 6402, Vernon's Ann.Civ.Stats., which provides that:

"Each railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such railroad company in running over their respective railways. Such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets and cattle. If said company fence its road it shall only be liable for injury resulting from a want of ordinary care."

The mare was killed at a road crossing. It appears that the railroad tracks bisected the pasture of Herbert Schmidt and that plaintiff had left his mare with Schmidt for pasturing. The plaintiff knew that the railway ran across the pasture and seemed familiar with the road crossing involved. There was an opening in the right-of-way fences to allow passage from a "farm to market road" to the Schmidt ranch house and from thence through a lane to a river. Cattle guards were placed on the two sides of the road so as to prevent livestock from passing from the opening into the right-of-way lanes. There were no cattle guards or gates where the road entered or left the railroad right-of-way. The openings in the fences were about one hundred feet in width. It was in this area that the mare was struck and killed by a locomotive.

The defendant specially pleaded that the crossing in question was a public crossing

and that defendant was required by law to maintain an opening in its right-of-way through which the owner could pass from one portion of his land to another.

The trial judge found simply that, "the defendant had not fenced its road at the place where the defendant's engine struck the mare," and concluded therefrom that "defendant was liable to plaintiff for the value of the mare killed by defendant's locomotive. (R.S. Art. 6402.)"

Defendant made request for additional findings which were sufficient to invoke a finding as to whether or not "said crossing was a public crossing," as well as a finding upon its other pleaded defense, i.e., the necessity for an opening connecting the two portions of the pasture. Article 6321, Vernon's Ann.Civ.Stats.

■ The evidence was sufficient to raise these issues. For example, the witness Rudolf Schmidt testified that the crossing was a public one and that "other people," presumably others than the Schmidts, used the crossing, and for that reason it could not be closed. The question of whether the crossing was a public one or not was an ultimate issue in the case. In 35 Tex.Jur. 725, Railroads, § 458, it is said:

"Liability Where Fences Not Required—In General.—In another article in this work it is shown that the statute (R.S. Art. 6402), providing for the fencing of railroad rights of way does not apply to such places as the public necessity or convenience requires to be left unfenced—such as the streets of a town, crossings of highways, depot grounds, switching limits, etc. Where, therefore, the evidence shows that the company could not lawfully fence its road, or that it would be impracticable to do so with due regard to public convenience or necessity, or because a fence would be dangerous to employees or the traveling public, the liability for killing or injuring animals on the track is the same as if the road were fenced—that is, the company is not liable unless the calamity

was due to failure to use ordinary care. In such cases negligence on the part of the defendant, proximately causing the injury, must be shown in order to justify a recovery. And if there is evidence to support a finding that the mishap occurred at a place where the defendant was not required to fence, it is erroneous for the court to instruct as to right to recover without reference to the degree of care used."

In the same work (35 Tex.Jur. 730), it is also said that, "The right to recover where animals have been injured at public crossings is wholly dependent on the showing of negligence." See also, International-Great Northern Ry. Co. v. Allen, Tex.Civ.App., 7 S.W.2d 900; Houston, E. & W. Ry. v. Peterson, Tex.Civ.App., 227 S.W. 747; Hines v. Curlee, Tex.Civ.App., 229 S.W. 609; International-Great Northern Ry. Co. v. Coulter, Tex.Civ.App., 27 S.W.2d 272; Gulf Coast & Santa Fe Railroad Co. v. Matlock, Tex.Civ.App., 244 S.W.2d 706.

■ It follows that the failure of the trial judge to find one way or the other upon the issue raised, when requested to do so, constituted reversible error. Wagner v. Riske, 142 Tex. 337, 178 S.W.2d 117.

■ If it be urged that the trial judge's finding that the "defendant had not fenced its road at the place where the defendant's engine struck the mare" was inferentially a finding that the crossing was not a public one, such inferred finding would be without support in the evidence. In fact, appellant here strongly urges that it is entitled to a rendition of judgment as a matter of law. However, in view of the circumstance that the burden of proving that the crossing was a public one and could not be fenced (35 Tex.Jur. 730) rests upon defendant and the case does not seem to be fully developed, probably because of the trial court's belief that the element of negligence was not involved in the case, we are of the opinion that the ends of justice will be better served by a remand and it is accordingly so ordered.

Judgment reversed and cause remanded.