## DEAN *v.* THE SULLIVAN RAILROAD COMPANY.

Railroad Corporations are required by statute to maintain fences on the sides of their road.

CASE. The plaintiff declared against the defendants, " in a plea of the case, for that the plaintiff heretofore, to wit, on the 10th day of June, 1848, was and from thence hitherto hath been and still is lawfully possessed and in the occupation of a certain close, situated in Claremont, &c. ; and the said defendants during the time aforesaid, were and still are in possession of, and in the use and occupation of a certain railroad passing over and across the plaintiff's said close ; and the said corporation by reason of their said railroad passing over and across the plaintiff's said close, on the day first above mentioned, ought to have erected, and, during all the time aforesaid, to have kept and maintained a sufficient and lawful fence on each side of their said railroad, against the plaintiff's said close, to prevent cattle, lawfully feeding, or depasturing, or being in said close, from erring or escaping from and out of said close, into and upon the defendants' said railroad, and into and upon other lands of the said plaintiff, and into and upon the adjoining closes, and to prevent cattle of other persons, lawfully feeding and depasturing in adjoining closes, from escaping into the said close of the said plaintiff ; yet the defendants, well knowing the

Dean *v.* The Sullivan Railroad Company.

premises, but continuing, &c., to wit: on the day and year first above mentioned, neglected and refused, and from thence hitherto have neglected and refused, and still neglect and refuse, to erect and keep a sufficient and lawful fence on each side of their railroad, against the plaintiff's said close, whereby the said close was, and has been, during all that time, laid open and exposed, and thereby, divers cattle, to wit: three horses, ten cows, and one hundred sheep, lawfully feeding and depasturing in said close, on the several days and times aforesaid, went, erred, and escaped from and out of the same, in and upon the adjoining closes, and upon other lands of the said plaintiff, and to other places unknown to the plaintiff; and the cattle of persons unknown to the plaintiff, by reason of said close being and remaining so open and exposed, on divers days and times between the day first above mentioned and the day of the purchase of this writ, entered into the said close of the plaintiff, and greatly injured the same, and spoiled the grass and grain thereon growing, and being, and by all which the plaintiff lost the profits of his said close for the time aforesaid, and was put to great trouble and expense in finding his said horses, cows, and sheep, so erring and escaping from his said close as aforesaid; to the damage, &c.

The defendants demurred generally.

*Gates* and *Fuller*, for the plaintiff.

*Freeman* and *Cushing*, for the defendants.

BELL, J.   At common law, owners of adjoining lands owe each other no duties, and are subject to no obligations to maintain fences.   By our statute, they are bound, if the lands are improved, to maintain the partition fence equally.   Rev. Stat. chap. 136.   As owners of land, where they own their track, railroad companies are subject to the same liabilities as other owners.   But these statute provisions do not apply to such corporations, where they own nothing in their track, but an easement, a right of way merely.   In such a case, neither the com-

27 *

pany nor the owner, by this statute, would be bound to fence. The interest of both requires that the road generally should be fenced. And the safety of the travelling community demands, that such roads should be effectually guarded against the hazards arising from animals passing on the track. We can, therefore, hardly suppose, that the legislature could intend to leave in any doubt, upon whom the duty rested of maintaining such fences.

The question is of great importance, both to the landowners and to the railroad companies; since upon its decision depends, in a great degree, the liability of the one or the other, for injuries to the animals and crops of the land owner, and to the engines and cars of the railroads, and to the persons and property borne upon the road, arising from such defects of the fences. In construing the statutory provisions, we are to regard the state of the common law, and the evils to be remedied, and the mischiefs to be guarded against by legislation, to which we have adverted, and the previous enactments on the subject. By the statute of 1840, (p. 434,) chap. 498, § 4, it was made " the duty of every railroad corporation to erect, or cause to be erected, and keep, or cause to be kept, in good and sufficient repair, a proper and sufficient fence on each side of the track," &c.; and this provision was inserted in the report of the Committee of Revision. It was omitted, while the statutes were passing through the legislature, and the existing provision inserted in its stead. The section is as follows : " If any railroad corporation shall neglect to keep a sufficient and lawful fence on each side of their road, any person against whose land such fence is insufficient, may notify the agent of such corporation thereof, and if such fence shall not be made sufficient within twenty days after such notice, the owner may make or repair such fence, and may thereupon recover of such corporation in an action of assumpsit, double the amount necessarily expended in making or repairing the same, as aforesaid; provided, however, that the foregoing provisions of this section shall not apply to any case where such corporation shall have settled with and paid the owner of such land for building and maintaining such fence." Rev. Stat. chap. 142, § 6.

Dean *v.* The Sullivan Railroad Company.

It is contended that this statute imposes on the railroad companies no such general duty to maintain fences along the sides of their road, as the declaration alleges ; and that the repeal of the statute of 1840, shows that the design of the legislature was, to change the duty and the responsibility, in relation to fences, and to exonerate the corporations from any liability, except that of paying double the amount expended by the landowner in building or repairing the fence, after due notice to the corporation, &c.

Upon this view, the responsibility for damages, arising from neglect to build and keep up the fence, whether to the landowner, the corporation, or to third persons, would be shifted from the corporation, who are chiefly interested in the railroad, and who are, by their charters, impliedly relieved from the risk consequent upon very rapid travelling, upon the landowner, who would thus be made to bear, without compensation, one of the most serious risks of railroad travelling. There is a very strong presumption that the legislature could not have contemplated such consequences, nor intended to make such a change of the law. And we have carefully considered this statute provision, with a view to trace the principle on which the legislature designed to settle the rights of the corporations and of the land owners, on this subject. The result of our examination is an undoubting conviction, that the legislature intended to continue the burden already imposed by the previous statute, upon railroad corporations, of erecting and maintaining proper fences upon each side of their track ; and to exonerate the land owner from any liability to maintain such fences, and to provide him a stringent remedy to enforce the performance of their duty by the railroad companies.

We think this conclusion is apparent, upon the language of the act: " If any railroad corporation shall neglect to keep a sufficient fence," &c. With what propriety can the corporation be said to *neglect* to do what is no part of their duty, by contract or by law. The idea of neglect is based entirely upon the existence of a duty or obligation, and this expression, we think, most strongly implies, that it was designed to be the duty of the

corporation to maintain such fences, especially when it is followed by a provision, that if, upon being notified, the neglect is continued for twenty days, the corporation shall be liable to pay double the cost of building it. The duty necessarily results from a penalty being imposed upon its neglect. The same conclusion follows from the proviso, which exonerates the corporation from the provisions of the section, " in any case where the corporation shall have settled with and paid the owner of such land, for building and maintaining such fence." We are wholly unable to imagine, upon what view this clause could be introduced, unless it was, that the duty of maintaining the fence rested, of course, on the railroad, unless the owner was settled with and paid for building it. The same result seems to us naturally to follow from the succeeding (7th,) section, which provides, that " if any person, having been thus settled with and paid for keeping any such fence in repair, shall neglect to do so, such railroad corporation may make such repairs, and recover the necessary expense thereof, of the person liable." If the legislature designed to leave the land owner under the general liability to fence against the road, with a limited recourse to the corporation only in certain events, it is inconceivable, that when making this provision, it should not have been extended to every neglect to repair the fence, by which the interests of the railroad company might be prejudiced, whether the party had been settled with and paid, or not. It seems evident from this section, that the legislature contemplated the duty of erecting and maintaining such fences, as resting exclusively on the corporation, in all cases, except where the land owner has been paid for assuming it. There is manifestly no third case contemplated, in which the duty rests upon no one. There are clearly many cases supposable where the land owner has no interest to compel the corporation to fence, and where they have no interest to pay him for fencing; where the public safety requires that the road should be fenced, and where no supposition can be admitted that the legislature did not intend to provide against this source of danger.

The same view is confirmed by the consideration of the inte-

Dean *v.* The Sullivan Railroad Company.

rest which railroads have in the ground over which their railway is laid. By the charters, as well as by the general railroad law, it is evidently supposed, they are to acquire a right of way only. They can attain no other, or higher interest, except by a voluntary conveyance. Now it is evident, that no right to erect or maintain fences results from a mere right of way, and if a railroad corporation can *neglect* to erect fences, it can only be, where they have a right to erect them. Such a right necessarily results from the duty imposed on them by law, if that is the true construction of the statutes; but if it were otherwise, it would seem to be clear that they were subjected to a penalty for not doing an act, the performance of which would be a trespass.

We are by no means sure that upon the same principle, upon which towns, and turnpike, and bridge companies are subjected to the duty of guarding dangerous causeways, side-hills, cuts, and bridges by railings, for the safety of travellers, the duty would not be implied at common law, that is, by an extension of legal principles to a new case falling *in pari ratione,* upon railroad corporations to maintain everywhere, where they were needed, such fences as would prevent any danger to travellers from the animals, either of neighboring land owners, or others, escaping upon the track. This point it is at present unnecessary to decide, because we are satisfied the same duty is necessarily implied from the revised statutes.

It has been suggested that where a new right is given by a statute, or a new duty imposed, and by the same statute a remedy is provided for any violation of such right, or neglect of such duty, the party whose rights are affected, is confined to the statute remedy. Admitting the general principle, we think it has no application to this case. If, in cases of that class, the remedy is, in its nature, coextensive with the injury, to which the party is exposed, the rule as stated would not be unreasonable. But it is apparent here, that the remedy provided is not general, but limited to a single object, that of obtaining compensation for building the fence after notice. It is in the nature of a provision to enable a party to anticipate and prevent the mischiefs that might result from neglect to build

a fence ; but it contains no provision whatever, for any adjustment of the damages which may have already resulted from neglect of duty. So far as there is a statute remedy provided, it may not be unreasonable to confine a party to it. But it can surely be no answer to an action for an injury to a man's cattle, when, through the neglect of the railroad to fence, they have escaped upon the track and have been injured, that the statute has provided a different remedy for neglect to build the fence. The statute remedy applies to no case, where twenty days notice has not been given to build the fence. The railroad company may, at any time, remove their fence, or any third person may do so, and thus expose a man's fields to injury, or his cattle to escape and loss. The owner, by the statute, may give twenty day's notice to the agent of the company to rebuild the fence ; if they do not, he may rebuild it for them at their expense. Is there no remedy for the damage and loss the land owner may sustain during those twenty days ? Certainly, the legislature have been very unfortunate in their enactments, if this is the true result.

The duties of the owners of adjoining lands as to fences, depend upon the statutes ; and in case of neglect by one owner to build his fence after notice, the other may build the fence and recover, as in this case, double the expense of building. But it has never been supposed that this remedy, designed to effect the single object of having the fence built, barred, or cut off in any way, or to any extent, any of the common law remedies for injuries resulting from the neglect of the owner to build the fence, as required by the statute.

*Judgment for the plaintiff on demurrer.*