ATCHISON & NEBRASKA RAILROAD CO. v. SAMUEL HARPER.

1. PROOF OF VALUE; *Indirect and Comparative Evidence, Inadmissible.* In an action brought by the owner of a colt, under the provisions of ch. 94, laws of 1874, to recover damages from a railroad company for wounding the animal on the line of its road, where the plaintiff has other and better evidence at hand as to the value of the colt for which damages are claimed, it is error to allow proof, against the objections of the railroad company, that the injured colt compared in appearance with the colts of another person, and against like objection to admit proof of the value of such other colts to fix and determine the value of the colt injured by the railroad company.

2. STOCK LAW OF 1874. The decision in *K. P. Rly. Co. v. Mower*, 16 Kas. 573, that ch. 94 of the laws of 1874, relating to the killing or wounding of stock by railroads, is constitutional and valid, considered, and affirmed.

*Error from Doniphan District Court.*

THIS action was commenced by *Harper* in a justice's court, alleging in a bill of particulars, "that the *Railroad Company* was owner of a line of railroad over S. $\frac{1}{2}$ of S.W. $\frac{1}{4}$ of section 31, T. 3, R. 21," onto which the plaintiff's colt wandered for want of a fence, without the owner's fault, and was there killed; that demand for payment had been made, and asking judgment for $40, the value of the colt, and $25 fee for the plaintiff's attorney. On appeal to the district court, and trial therein at September Term 1876, *Harper* had judgment, and the *Railroad Company* brings the case here.

*W. W. Guthrie,* for plaintiff in error, contended, that it was not competent evidence to allow one witness to testify to comparative value of animals, and then to allow another to testify to the actual value of colts other than plaintiff's. Such case does not come within the rule of hypothetical cases put to scientific witnesses.

2. Plaintiff tried this case upon the theory that he should recover upon the showing, that he owned a colt, his private property, and defendant owned a railroad, its private property, and his land and defendant's land being inclosed in a joint inclosure, into which plaintiff had turned his colt on his land, and defendant was working its locomotive on its land, and without any fault on its part, its locomotive had accidentally killed his colt while trespassing on defendant's land, for not only the value of the colt but for $25 additional, because the value of the colt was not paid when he asked for it, and obtained judgment thereon. Unless railroad corporations have been outlawed by the act of 1874, such judgment is flatly in the face of the decision of this court in *Baker v. Robbins,* 9 Kas. 303; *U. P. Rly. Co. v. Rollins,* 5 Kas. 174, 182–187; *Caulkins v. Mathews,* 5 Kas. 191, 199. The fee-simple owners (as admitted by petition as to defendant's land, and on trial as to plaintiff's land,) fenced in common, and thereby each owner undertook to take care of his own land, and his own stock; and as said in the *Rollins case,* p. 183,

neither land-owner is liable to the other except for wanton injuries, which is held in the *Baker-Robbins* case to exist where each owner allows his stock to trespass on the other's land. The partition-fence laws of this state are still in full force unless repealed by implication (as to railroad companies only,) by act of 1874; and such repeal even as to railroad companies is forbidden by the constitution, § 16, art. 2. But the stock act of 1874 does not attempt to cover this kind of cases; it only requires protection to be given to wandering stock which is authorized to wander, or to make good the injuries. It does not apply to lands not the subject of fencing; (49 Mo. 199; 18 Kas. 462;) nor, for same reason, to stock not subject to be fenced against. Can the owners of hogs recover, under such act, for hogs which the owners have allowed to wander upon a railroad track, or have passed under a three-board fence put up by the railroad company, and been killed?

3. We think that this court erred in deciding the case of *K. P. Rly Co. v. Mower*, 16 Kas. 573, misapplied the true principles governing in such case, and certainly to the extent of sustaining such judgment for attorney-fees additional to the actual value of injury claimed. Since that decision, the supreme court of Nebraska in *A. & N. Rld. Co. v. Baty*, Oct. 1877, under a similar constitution, on a like statute, has decided that statute unconstitutional. This court holds the imposition of the payment of a sum in excess of actual injury, to be a "police regulation"— the Nebraska court, "a penalty." Can such imposition, "as a part of the police power of the state," be other than a penalty? Is not the payment of "an attorney-fee," (whether any attorney was in fact employed, or not,) a penalty for the failure to perform the terms of such "act?" Where such terms have been complied with, such payment (fine) is not imposed. All the cases cited in 16 Kas. 577, sustain the law upon *that* ground. Cooley Const. Lim., p. 580, says that the liability can exist only by express statute. And see, 25 Ill., 143; 49 Mo., 440; 20 Wis. 254. The Kansas act of 1874 is obnoxious to the well-

settled rule that, "It may be considered a well-settled rule in respect to the operation of the laws, that corporate companies and natural persons are placed precisely on the same ground, and this is the true ground, and the only one, upon which equal rights and just liabilities and duties can be fairly based." To destroy any other property in like manner, costs no penalty. To *unjustly* prosecute a suit, costs no fine of $25; while to *unsuccessfully* defend a case under this statute, costs such penalty, with or without an attorney as apology therefor. Such legislation is more than a tub thrown to the so-called "granger whale," for if sustained, will continue to roll faster, crushing every principle of equality and justice in its track. Cities vote bonds to induce railroads, and when built, repudiate their payment. Individuals borrow money, and contract to pay an attorney-fee on foreclosure, and before the debts mature, legislation is invoked to prevent collection. We submit that the attorney-fee is a penalty which cannot be sustained, unless this court is prepared to say, in the language of the Nebraska case, above cited, that "the legislature may apply the same principle to simple debt, and therefore if upon demand by the creditor the debtor fails to pay within a certain time, he may, by legislative decree, be compelled to pay double, treble, or a hundred times the amount of the debt, according as the legislature may decree by legislative enactment."

*W. D. Webb,* for defendant in error, submitted, 1st, that the court below was justified in overruling the objection to the testimony of witness Tracy because the attorney for the plaintiff in error did not state any ground of objection to the testimony. (9 Kas. 627.) 2d, the same in regard to Watkins' testimony. But this testimony was admissible in any event. 21 Minn. 56.

The opinion of the court was delivered by

HORTON, C. J.: This was an action to recover from the railroad company damages for injuries to a colt owned by the

defendant in error, together with a reasonable attorney-fee for the prosecution of the suit. The liability of the railroad company was based upon the provisions of ch. 94, laws of 1874, pp. 143, 144. Judgment was rendered for the defendant in error for $40 as his damages, and $25 as the attorney-fee.

Upon the trial in the district court, the following questions and answers were admitted against the objections and exceptions of the railroad company. From John Tracy, a witness produced by the defendant in error: "Did you know plaintiff's colt that was killed, and Mr. Snyder's colts? *Ans.*—I know all the colts." ".How did the plaintiff's colt compare with Snyder's? *Ans.*—They are in appearance about the same kind of colts. I am not a good judge, but would call them about the same value." From John Watkins, also produced by the same party: "State what was the value of Snyder's colts last November, (the month Harper's colt was wounded.) *Ans.*—Snyder's colts were worth $50 apiece. They were good colts. I offered that for them." There was error in permitting the witnesses Tracy and Watkins to thus testify. The policy of the law, independent of other reasons, requires that the best evidence within the control of the party introducing testimony should be produced. It was not claimed or asserted that direct proof of the value of the colt was wanting. On the other hand, the record shows that the plaintiff in the court below had other persons attending the trial in his behalf, who knew the value of the colt in question, and were competent witnesses in the case. The only purpose of submitting the testimony quoted, must have been to increase the actual value of the colt, prior to its injuries, by comparative or indirect evidence, and thus to obtain damages in excess of its real worth. Such testimony, if permitted in cases of this character, where as a general rule the sympathy of the jury is with the party suing, and against the corporation, would furnish an imaginary rather than an actual basis for recovery, and would naturally tend to the giving of excessive damages. If the competency of such testimony

was indorsed by this court, in all similar cases hereafter, instead of proving the known or true value of animals wounded or killed by the agents or cars of railroad companies, counsel seeking to recover large damages, to prove values, would introduce witnesses to show by their evidence the appearance of the animals wounded or killed with other like animals of great value, and supplement such proof with the testimony of the values of the other animals. Such proof is deceptive, and certainly liable to mislead a jury. In the absence of any necessity of adopting proof of this kind, the courts should not allow its admission.

Again, the law is well settled that all evidence should be confined to the points at issue. The attention of the jury should not be distracted by immaterial or irrelevant matters. The reasons why this rule should be maintained are obvious. If not enforced, trials would be injuriously prolonged, the real issues obscured, and verdicts taken on side issues. In the case at bar, one of the questions at issue was the value of Harper's colt in November 1874. Instead of being directed closely to this issue, the minds of the jury were diverted by the evidence of Tracy and Watkins to Snyder's colts and their value. If one witness could testify concerning the value of Snyder's colts, then many others could likewise have been introduced for the same purpose, and the result would be greatly unfavorable to the corporation against which the damages were claimed. The evidence offered and objected to was unnecessarily circuitous, was calculated to distract the jury from the real issues, was seemingly designed to prejudice the rights of the plaintiff in error, was not the best evidence at hand, and should have been rejected. The counsel for the defendant in error suggests that, admitting the inadmissibility of the testimony, the court was justified in its rulings, as the attorney of the plaintiff in error on the trial did not state the reasons for his various objections. As a general rule this of course should be done, and we refer to the many decisions of this court in support of the reasonableness of the rule; but in this case the evidence was so im-

proper, its incompetency so obvious and incurable, we think the objections sufficiently definite for the plaintiff in error to avail itself of the error of the court.

As to the other questions presented by the counsel for plaintiff in error, we need only say that they have been settled by the adjudications of this court adverse to the positions maintained in his brief, and we do not feel inclined to reopen the discussion concerning them. See *K. P. Rly. Co. v. Mower*, 16 Kas. 573; *Hopkins v. K. P. Rly. Co.*, 18 Kas. 462.

For the error in admitting incompetent testimony, the judgment of the district court will be reversed.

All the Justices concurring.