Ernest S. Goens, State's Atty., of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of six years in the penitentiary on a charge of burglary.

The indictment in the case was returned on the fourth day of July, 1944, alleging the offense to have been committed nearly a year previous thereto. On the eleventh day of July, following the indictment, a bench warrant was issued for appellant who was then in jail in another county and he was returned to Shelby County and placed on trial on the seventeenth day of July. The accused had been represented for some time by Mat Davis, an attorney of Gilmer, Texas, who was unable to attend court on account of illness as reflected by a motion for continuance found in the record. This motion was overruled by the court and that is the chief grounds urged as error but its merits can not be considered on this appeal because it is not brought forward by a bill of exception. Moore v. State, 144 Tex.Cr.R. 145,

161 S.W.2d 83; Reed v. State, 144 Tex. Cr.R. 245, 162 S.W.2d 109; Martin v. State, 144 Tex.Cr.R. 313, 162 S.W.2d 722; Barrera v. State, Tex.Crim.App., 174 S.W. 2d 735; Chavez v. State, Tex.Crim.App., 181 S.W.2d 85.

We find other bills of exception in the record pertaining to matters that will not be discussed for the reason that we think the evidence is insufficient to sustain the conviction. The State relied solely upon a written confession made by the accused, dated April 15, 1944. It is sufficiently proven that the crime of burglary was committed but there is no evidence connecting appellant with the crime save and except the confession. This varies from the allegations in the indictment and can not support a conviction. The time of the commission of the offense, as reflected by the confession, is subsequent to the date the confession was made and therefore an impossible date. It was also subsequent to the date of the return of the indictment, and to the trial of the case, hence cannot support the conviction. Kincaid v. State, 8 Tex.App. 465; Clement v. State, 22 Tex. App. 23, 2 S.W. 379. See also Vernon's Ann.C.C.P., Article 396, Note 12; and Vol. 21, Texas Digest, Indictment and Information, ⚬⟹176.

The judgment of the trial court is reversed and the cause is remanded.

## FORT WORTH & D. C. RY. CO. v. WELCH.
### No. 5652.

Court of Civil Appeals of Texas. Amarillo.

Nov. 6, 1944.

Rehearing Denied Dec. 4, 1944.

Tatum & Tatum, of Dalhart, and Barwise & Wallace, of Fort Worth, for appellant.

B. N. Richards, of Dalhart, for appellee.

HEARE, Justice.

This appeal presents the issue of the constitutionality of Article 6402, R. C. S. 1925, which provides as follows:

"Art. 6402. Killing stock.—Each railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such railroad company in running over their respective railways. Such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets and cattle. If said company fence its road it shall only be liable for injury resulting from a want of ordinary care."

The appellee, in a nonjury trial, recovered judgment against the appellant for the sum of $3150, being the determined value of forty-five head of cattle alleged to have been killed by the appellant's trains on its railway in Hartley County, Texas on the night of January 7, 1944. It was alleged, and the evidence reveals, that an unprecedented snow and windstorm occurred on the evening of January sixth and continued throughout the following day; that the snow drifted badly and the temperature fell to near zero; that U. S. Highway 87 parallels the appellant's right of way, running in a northwesterly and southeasterly direction between Channing and Hartley, and along the northeast side of the highway is a pasture fence enclosing a pasture in which the cattle were located; that snowdrifts covered the pasture fence and the cattle walked over the drifts onto the highway and across it onto the railroad right of way of the appellant. It is undisputed that the appellant did not have its right of way fenced on the side adjoining the highway and that Hartley County had, prior to January 6, 1944, adopted the stock law prohibiting stock, such as those described in Article 6402, from running at large. It was further shown that the place where the right of way was unfenced was not a place where a fence would be prohibited. The record further shows that the storm subsided about nine o'clock on the night of January 7, 1944, that the remainder of the night was a bright moonlight night, and that three trains were operated by the appellant, one a snowplow and the other two

being passenger trains, all going in a southeasterly direction from Dalhart to Amarillo; that one of the passenger trains became uncoupled because of running over one of the animals; that the cattle in question were found dead over a stretch of several miles along the right of way the following morning.

The trial court made detailed findings of fact and conclusions of law but we deem is unnecessary to set them out in extenso. Among the findings, however, were the facts concerning the storm and death of the cattle, as above set out, the location of the highway with reference to the appellant's right of way, the lack of a fence along the northeast side of the right of way between the right of way and the highway, and the further finding that the cattle did not enter the right of way of the appellant at any highway crossing. The trial court found that the operators of appellant's trains failed to keep a proper lookout for livestock.

The trial court made extensive findings concerning Article 6402 and the conditions existing in Texas at the time of its enactment in the year 1905, finding that at that time many cattle were roaming at large within the State of Texas; that the number of cattle roaming at large gradually decreased with the result that in January 1944 very few cattle were permitted to roam at large; that in 1905 approximately thirty per cent of the counties of the State had been authorized by the Legislature to adopt stock laws, none of which counties was located in the Panhandle of Texas; that in January 1944 more than eighty per cent of the counties of the State had been authorized to adopt stock laws and, as heretofore stated, that portion of Hartley County, where the appellee's cattle were kept and where his cattle were struck by one of the appellant's trains, had adopted the stock law. Other findings of fact which we deem material to the contention of the appellant are:

"20. That in 1905 the locomotives, cars and other equipment used by the railroads generally within the State of Texas, and by this defendant in particular, were much lighter than that now used by railroads generally, and by this defendant in particular, and that in 1905, because of the large number of cattle roaming at large, and because of the lighter equipment then used by railroads generally, and this defendant in particular, there was a definite hazard

and danger to the public resulting from collisions between trains operated by railroads, including this defendant, and livestock struck on the tracks of railroad companies, including this defendant. That because of the vast decrease in the number of cattle roaming at large generally in 1944, and because of the use of heavier locomotives, cars, and other equipment by the railroads generally, and by this defendant in particular, there is no substantial hazard or danger to the public in general resulting from a collision between livestock and railroad trains.

"21. That the hazard of danger to the public generally resulting from a collision between a railroad train and livestock was the cause of the Legislature enacting what is now Article 6402, R. C. S.

"22. That in the year 1905 there were no paved highways within the State of Texas other than perhaps in a few of the cities of the State; that there were no interstate U. S. financed or approved highways such as U. S. Highway No. 87, and no inter-city automobile traffic, either by private automobile or motor vehicle; that there were no contract or common carriers by motor vehicle upon the public highways, and that substantially all of the freight and passenger traffic, intrastate as well as interstate, was moved by common carriers by rail.

"23. That up until about the year 1920 there was little use of the public highways of the State of Texas for the transportation of persons or property, either by motor vehicle or otherwise; that beginning in about 1920, or shortly thereafter, there began to develop a vast highway system within the State of Texas, which has continued to expand and develop from that time on to the present; that the use of motor vehicles, both public and private, upon the public highways of the State increased rapidly from that time on to the present.

"24. That in 1905 there were no motor vehicles of contract or common carriers operating over U. S. Highway No. 87, but that at this time, and in particular in January, 1944, many motor vehicles of contract and common carriers operate over U. S. Highway 87, transporting besides the operators, many passengers and property of great value, at rates of speed comparable to and frequently in excess of the rates of speed at which the defendant operates its trains; that much of the freight and passenger traffic handled by contract and com-

mon carriers by motor vehicles over the public highways, and in particular over U. S. Highway No. 87, is for hire under regularly established tariff rates on regularly established schedules, and such traffic is in competition with the carriage of passengers and freight by this defendant, as well as other common carriers by rail within the State of Texas.

"25. That there have been no personal injuries to, or deaths of, any persons as a result of a collision between railroad trains and livestock within the State of Texas for a number of years, but that there have been personal injuries to, and deaths of, persons resulting from collisions between motor-driven vehicles operating on the public highways of the State and livestock as follows:

and that such negligence was the proximate cause of the death of the cattle in question. The court further held that the appellant was negligent in failing to keep a proper lookout and that such negligence was likewise a proximate cause of the death of the cattle.

As we analyze it, the contention of appellant amounts to an insistence that, although Article 6402 has heretofore been adjudicated to be constitutional, yet by reason of the change of conditions brought about by the initiation and rapid increase of the business of hauling freight and passengers by motor vehicle for hire over the highways of the State of Texas, the provisions of Article 6402, imposing absolute liability on railroad companies for the death of livestock in the event of their failure to

### Motor Vehicle-Animal Accidents

| Number of Accidents | | Fatal | Non-Fatal | Property Damage |
|---|---|---|---|---|
| 1940 | 117 | 4 | 30 | 83 |
| 1941 | 160 | 12 | 43 | 105 |
| 1942 | 96 | 8 | 22 | 66 |
| 1943 | 100 | 6 | 20 | 74 |
| 1944 to date | 33 | 1 | 7 | 25 |
| Total | 506 | 31 | 122 | 353 |

"26. That Article 6402, R. C. S. is applicable only to common carriers by rail, and that there is no statute similar in its import applicable to motor vehicles operated by contract or common carriers over the public highways of the State of Texas."

"28. That the burden placed upon common carriers by rail by Article 6402, R.C.S. has become and is greatly disproportionate to the public good or benefit, and an unreasonable expense on common carriers by rail in Texas generally, and upon this defendant in particular."

In its conclusions of law the trial court stated that the requirements of Article 6402 are now arbitrary, unreasonable, and unjust and deprive the appellant of the equal protection of the law and deprive it of its property without due process of law, yet in view of the fact that the Supreme Court of Texas has heretofore held Article 6402 constitutional and within the police power of the State of Texas, then the appellant was negligent in failing to maintain a fence along its right of way between the limits of Hartley and Channing, Texas,

fence their right of ways, is discriminatory and therefore now unconstitutional because it does not apply alike to all common carriers of freight and passengers.

The appellant and the trial court apparently have taken the view that the regulation provided for in Article 6402 was first enacted in 1905. We find, however, that the essential part of this regulation was imposed almost contemporaneously with the establishment of the first railroad system in this State. The first railroad service to be inaugurated in Texas was in 1853. It is a matter of history that work on the Buffalo Bayou, Brazos and Colorado Railroad began in 1851 and twenty miles of this road from Harrisburg to Stafford's Point was completed and the first service inaugurated September 7, 1853. Extension of the line to the Brazos River was pushed and completed to Richmond by December 1855. By the fall of 1860 the road had reached the Colorado River, a distance of eighty-one miles from its origin.

In the early part of 1853 the Legislature enacted a comprehensive law regulating

railroads. Laws of the 4th Legislature, Second Session, Page 55, Chapter XLVI, 3 Gammel's Laws of Texas, p. 1339. This Act provided, among other things, for warning signs at railroad crossings, the ringing of a bell or the blowing of a whistle at crossings, the formation of passenger trains so that no baggage, freight, merchandise, or lumber car should be placed in the rear of passenger cars, making it a misdemeanor for an engineer or conductor to be intoxicated while in charge of a train, and other similar regulations governing the mode of construction and operation of railroads. On February 8, 1860 an Act supplementary to the 1853 regulatory act was approved. General Laws, 8th Legislature, Page 60, Chapter 51, 4 Gammel's Laws of Texas p. 1422. Part of the 1860 Act reads as follows:

"Section 6. That each and every Railroad Company in this State, shall be liable to the owner, for the value of all stock killed or injured, by the locomotives and cars of such Railroad Company in running over their respective Railways, which may be recovered by suit before any Court having jurisdiction of the amount. If the Railroad Company fence in their road, they shall only then be liable in cases of injury resulting from the want of ordinary care."

The foregoing Act was incorporated, without change of wording, as Article 4245 in the Revised Statutes of 1879, and was carried forward without material change as Article 4528 in the 1895 revision. Apparently because of questions that arose concerning the effect which the adoption of the stock laws, prohibiting certain animals from running at large, was having in certain counties or subdivisions through which a line of railway might run, the Legislature in 1905, c. 117, enacted, as an amendment to the stock law, Section 20a, which provided in substance for the absolute liability of railroad companies for stock killed or injured by their locomotives and cars in counties or subdivisions where the stock law had been adopted, but provided that if the railroad company should fence its road, then it should only be held liable in cases of injury for want of ordinary care. In other words, Section 20a made the provisions of Article 4528, R.C.S. 1895, definitely to apply even to areas where the stock law had been adopted. Article 6603, R.C.S. 1911, carried forward the same provisions, combining the provisions of Article 4528 and Section 20a

theretofore enacted, and employed substantially the same wording as is used in Article 6402 in the 1925 revision. We have copied Article 6402, R.C.S. 1925, at the outset of this opinion.

Thus it will be seen that by unbroken legislation since 1860, when but a few miles of railroad were in operation in the State of Texas, it has been the policy of our Legislature to keep in force the law rendering a railroad company absolutely liable for the value of stock killed or injured by its locomotives and cars, unless the railroad company relieve itself of that absolute liability by fencing its right of way.

The validity of the foregoing legislation has been uniformly sustained by the courts of Texas in attacks made on its constitutionality. In Texas Central Ry. Co. v. Childress, 1885, 64 Tex. 346, Article 4245 of the 1879 statutes was directly attacked as being unconstitutional, unless it be construed to permit the defendant railroad company to show as a defense that all necessary diligence was used by the employees of the company to prevent the accident. We deem it advisable to quote at length from that opinion. The Supreme Court, in answer to the contention, said:

"Whether this would be the effect of a statute which contained only such a provision as is found in the first sentence of the above quoted article, it is not necessary for us to determine. In Alabama it has been held that a statute which provided that railroad companies should be liable for all damages to live stock caused by locomotives or railroad cars was unconstitutional. Zeigler v. [South & N. A.] Railroad Co., 58 Ala. 594. But that statute did not give these companies the right to protect themselves by fencing their tracks. All parts of article 4245 of our Revised Statutes must be construed in connection, and· thus construed, railroad companies are made liable for damages unless their road is fenced; in that case they are liable only in event of the want of ordinary care. They are furnished by the statute with the means of protecting themselves from any greater liability than they are subjected to at common law, and if they do not avail themselves of this means they must abide the consequences. It cannot be doubted but that the legislature had the right to declare what should be a prima facie case against these companies, and what reasonable facts should amount to a defense by which it could be rebutted. The object of

the statute was to compel them to fence their tracks, for the purpose of preventing damage to live stock, and for the still more important purpose of protecting the lives and limbs of passengers upon their trains. Blair et al. v. Railroad Co., 20 Wis. 254; Corwin v. Railroad Co., 13 N.Y. [42], 45. It was an exercise of the police power, and as such has been universally upheld. Pennsylvania R. R. Co. v. Riblet, 66 Pa. 164 [5 Am.Rep. 360]; Kansas Pac. Ry. Co. v. Mower, 16 Kan. 573; Atchison & Neb. R. R. Co. v. Harper, 19 Kan. 529.

"It may be exercised by a positive command to inclose with fences, enforced by a direct penalty; or by rendering the companies liable for damages resulting from a failure to perform this duty. Kansas Pac. Ry. Co. v. Mower, supra; Dean v. Sullivan Railroad [22 N.H. 316], 2 Foster 316. Our legislature selected the latter means, and made the payment of damages to the owner of the animal killed, the penalty by which the fencing of railroads should be brought about. To hold that a company may refuse to fence their track, and escape this penalty upon grounds not provided in the statute, is to render it nugatory, and to defeat the object intended to be secured by the law.

"These principles are so well settled by the authorities already cited that further discussion of them is unnecessary.

"We think the law constitutional, and that when a railroad company has not fenced its road it is no answer to a suit against them, for killing or injuring live stock, that the damage occurred without any negligence on their part."

In the case of Gulf, C. & S. F. Ry. Co. v. Hudson, 77 Tex. 494, 14 S.W. 158, the defendant railroad company attempted to show that the presence of a fence would not have prevented the injury and death of the cattle which had been stampeded onto the tracks by a storm. The Court said that if a railroad company does not fence its road, the law makes this such negligence as fixes liability on the company for injury to stock by locomotives and cars running on the road at any place where the road might lawfully be fenced, and that in such a case where there was no fence ordinary care could not exist.

The regulation was sustained in Gulf, C. & S. F. Ry. Co. v. Rowland, 70 Tex. 298, 303, 7 S.W. 718, and Ft. Worth & R. G. Ry. Co. v. Swan, 97 Tex. 338, 78 S.W. 920. The validity of the 1905 Act was sustained in Texas & P. Ry. Co. v. Webb, 102 Tex. 210, 114 S.W. 1171.

The question now arises whether changed conditions have, as is contended by the appellant, brought about such a discrimination between railroads and other carriers as to render the Act now unconstitutional. A statute valid when enacted may become invalid by a change in conditions to which it is applied. Nashville, C. & St. L. R. Co. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949, and cases there cited. The question for determination is whether the admitted change in conditions, with particular reference to the building and expansion of highways and the establishment and operation of the businesses of transporting freight and passengers by motor vehicle over those highways for hire, and the failure of the Legislature to deprive such motor carriers of the defense of the use of ordinary care in claims against them for the value of livestock killed by them, has rendered Article 6402 invalid because of discrimination.

It is a well-recognized principle that the State has a broad discretion in classification in the exercise of its power of regulation. Smith v. Cahoon, 283 U.S. 553, 566, 51 S.Ct. 582, 75 L.Ed. 1264, 1274, citing many authorities.

"Equality of rights, privileges, and capacities unquestionably should be the aim of the law; and if special privileges are granted, or special burdens or restrictions imposed in any case, it must be presumed that the legislature designed to depart as little as possible from this fundamental maxim of government." Cooley's Constitutional Limitations, Eighth Edition, Page 813.

In order to be valid, a statutory classification must reasonably promote some proper object of public welfare or interest, must rest on real and substantial differences, having a natural, reasonable, and substantial relation to the subject of the legislation, and must affect alike all persons or things within a particular class, or similarly situated. 16 C.J.S., Constitutional Law, p. 954, § 489.

Courts have laid down, as limitations of the power of classification, certain rules: (1) The classification cannot be arbitrary. It must be based upon substantial distinction which makes one class really different from another. (2) The classification must be germane to the purpose of

the law. (3) The classification must not be based upon existing circumstances only, so as to preclude the class opening to let in or let out members. (4) The law must apply equally to members of each class. (5) The characteristics of each class must be so far different from those of others as to reasonably suggest at least the propriety, having regard for the public good, of substantially different legislation therefor. Kiley v. Chicago, M. & St. P. Ry. Co., 138 Wis. 215, 119 N.W. 309, 318, 120 N.W. 756. In short, there must be a reasonable basis of distinction between railroad companies and motor freight and passenger carriers operating on the highways to justify legislation which applies to one and does not apply to the other.

We are of the opinion that a reasonable basis for such distinction exists. Although the motor lines and the railroads are engaged in the same general business, yet the means and methods by which they perform that business are, of necessity, so wholly different that the legislature is justified in separating them into different classes for the purpose of regulation. The railroad lines own their right of ways and tracks. State Highways are public property and the use of highways to haul freight for hire is a mere privilege subject to reasonable state regulations. Britton v. Smith, Tex. Civ.App., 82 S.W.2d 1065; Box v. Newsom, Tex.Civ.App., 43 S.W.2d 981. The use of such highways for gain may be regulated or even prohibited by the legislature as it sees fit. New Way Lumber Co. v. Smith, 128 Tex. 173, 96 S.W.2d 282; Shuppe v. Railroad Commission of Texas, 123 Tex. 521, 73 S.W.2d 505.

The Legislature has enacted a comprehensive law governing the use of public highways by motor carriers engaged in the transportation of passengers and freight for hire. Articles 911a and 911b, Vernon's Annotated Civil Statutes. Furthermore, the Legislature has enacted regulations applying to all motor trucks operating on the highways setting the limits for the length, the width, and the height of the vehicle and the weight of the load. The Legislature has seen fit to require the securing and filing with the Railroad Commission of public liability and property damage insurance as a prerequisite to any operation under a certificate or permit to use the highways of Texas for the transportation of persons or property thereon for hire.

None of the foregoing regulations imposed upon highway motor carriers applies to railroads. Others could be mentioned. Likewise, there are many regulations which apply to railroads and which do not apply to any other class of carriers. These different regulations are not imposed against the respective carriers solely because of the business in which they are engaged, but because of the means and the method that they must necessarily employ in conducting that business.

██ It will be noted that throughout the many years during which the provisions of Article 6402 have been in effect, the Legislature has had in mind not only the purpose of protecting the owners of the livestock which may be injured or killed by the railroads, but also the purpose of protecting the lives and limbs of passengers upon railroad trains. It may be true that because the railroads now use heavier equipment, the danger of injury to their passengers by reason of the striking of livestock on the railroad has been diminished or has even ceased to exist, yet it can not be said that the danger to livestock has ceased to exist, as witness the instant case. The lack of necessity for further protection of passengers on the trains might be a weighty argument to be presented to the Legislature in support of a proposal to repeal Article 6402, but it is not within the province of the courts to repeal a valid statute. Furthermore, most of the changed conditions alleged by appellant already existed in 1925. The record in the instant case shows that in 1920 there had begun an expansion of highways and motor travel was rapidly increasing. In adopting the revision of the laws in 1925, the Legislature saw fit to retain Article 6402. A revision of the statutes implies a re-examination and restatement of the law in a connected or improved form with or without material changes. It will be presumed that in adopting a revision, the Legislature proceeded diligently and with full knowledge of the consequences of its act. Vela v. Shacklett, Tex.Civ.App., 1 S.W.2d 670; American Nat. Ins. Co. v. Collins, Tex.Civ.App., 149 S.W. 554.

For authority to sustain its position, appellant relies on the fairly recent case of Atlantic Coast Line R. Co. v. Ivey, 148 Fla. 680, 5 So.2d 244, 139 A.L.R. 973, decided in 1941. In that case the Supreme Court of Florida, with two Justices dissenting, held

that on account of the changed conditions, a statute which they had theretofore held to be valid had become unconstitutional because discriminatory. The statute in question imposed on the railroads a penalty of double the value of the animal killed plus an attorney's fee in the instance where an animal was killed by a train at a place where the road could have been, but was not, fenced. We have carefully examined that opinion, yet we are not persuaded to hold Article 6402 now unconstitutional.

We are of the opinion that the Legislature has, in its wisdom, made a classification, reasonable and not arbitrary, which reasonably promotes public welfare and public interest and which rests upon real and substantial differences between railroads as carriers and motor truck and bus lines as carriers, and has, in its wisdom, retained in the statutes Article 6402, which by its nature imposes a penalty upon railroads for their failure to do something which they can do and which, if done, will inure to the public good and will relieve them of the penalty otherwise imposed.

It is conceded by appellant that if the validity of Article 6402 is upheld, it becomes unnecessary for this Court to discuss or pass upon the second point of appeal presented.

For the reasons stated, the judgment is affirmed.