

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

*see WW-84*

**WILL WILSON**
**ATTORNEY GENERAL**

March 5, 1957

Senator George Parkhouse
The Senate of The State of Texas
Austin, Texas

Dear Senator Parkhouse:

Opin. No. WW-29

Re: Constitutionality of
Committee Substitute
for Senate Bill 101.

With reference to your letter of February 6, 1957, requesting an opinion on the constitutionality of the above captioned bill, we tender the following opinion:

### SUMMARY OF COMMITTEE SUBSTITUTE FOR S. B. NO. 101

Section 1 declares the policy, intention and purposes of the Legislature. The policy of the Legislature is declared to be to save, protect and preserve the soil of this State for posterity. It is stated that in many areas of the State there is a total lack of surface water, but that in many of such areas there is an ample supply of underground water which might be used to water such land and grow cover crops that would prevent wind as well as water erosion due to excessive rainfall, thereby permitting soil conservation practices. It is further stated that where there exists ample subsurface reservoirs of water, the cost of pumping such water is prohibitive, but there are great reservoirs of natural gas produced and sold at prices such as would permit the pumping of water for irrigation, and would aid in the prevention of soil erosion, and would promote the general welfare. Because of their importance, Sections 2 and 3 are quoted in full as follows:

"Sec. 2. From and after the effective date of this act, every person owning or operating any gas well from which natural gas is produced, sold or used off the premises on which such gas well is located in order to aid in the prevention of soil erosion and the protection of the soil, shall make available, from the production of such gas well, to the person or persons engaged in agricultural activities upon such premises, if requested to do so, gas from the production of said well up to an amount equal to the royalty interest of the owner of the land on which said well is located, as reflected by the terms of the oil and gas lease of such person owning or operating said gas well, for the operation by such person or persons

engaged in agricultural activities of pumps necessary for the pumping of said water, as may be necessary and proper for the irrigation of such portion of said premises as may be devoted to the growth of agricultural products or to pasture or orchard use, to the end that the soil upon which said agricultural products are grown shall be preserved and protected from erosion due to any cause."

"Sec. 3. The prices, terms and conditions upon which natural gas shall be made available under this act shall be determined by negotiation between the parties. In the event of their inability to agree as to any or all of such prices, terms and conditions, either party to the negotiation may apply to the Railroad Commission of Texas to fix same. In reaching its determination, the Railroad Commission shall consider the necessity of the applicant for the gas for the purposes specified herein, the value of such gas and its components, the efficient operation of the gas wells of the producer of the gas, the obligations assumed by such producer in the sale or other disposition of such gas, and all other factors relevant to the effectuation of the policy and purposes of this act with justice to all concerned."

Sec. 4 provides that under this act, the procedure before the Railroad Commission shall be that applicable to such proceedings by general law and orders promulgated by the Commission and provides that appeals may be taken from its decisions in the same manner.

Sec. 5 relates to parties to such proceedings.

Sec. 6 provides that this act shall not create an obligation on the part of the operator of a gas well to furnish gas for use off the premises from which it is produced or to assume any public utility duties to the public at large.

Sec. 7 provides that in case of a controversy before the Commission, the owner or operator of the gas well or wells involved shall make available to the persons entitled thereto natural gas as prescribed in Sec. 2 on such temporary terms and conditions as the Commission shall prescribe by order or general rule subject to adjustment retroactively.

Sec. 8 provides for penalties against an owner or operator who fails to comply with any duty imposed by the act.

Sec. 9 declares all laws or parts of laws in conflict with the act repealed to the extent of such conflict.

Sec. 10 is a standard saving or severability clause.

Sec. 11 delcares an emergency and suspends the constitutional reading rule, and provides that the act shall take effect from and after its passage.

We have examined the proposed legislation with particular reference to a majority decision of the Supreme Court of Oklahoma[1] holding a similar bill violative of Article 2, Section 24, of the Oklahoma Constitution in that the act constituted a taking of property without due process of law. Phillips Petroleum Company v. Corporation Commission of Oklahoma, et al., Cause No. 37250, November 20, 1956, (as yet reported only in an advance sheet, Volume 27, The Journal, p. 1920).

An opposite result was reached when the validity of the same bill was questioned before a three-judge Federal District Court. Phillips Petroleum Company v. Ray C. Jones, et al., December 12, 1955, No. 6794, Civil Docket, District Court for United States Western District of Oklahoma, (not yet reported).

The main questions for our determination are (a) whether the bill is violative of Article 1, Section 17, of the Constitution of Texas, relating to property taken for public use; (b) whether the bill violates Article 1, Section 16, of the Constitution of Texas, protecting the obligations of contracts; and (c) whether the bill violates substantive due process afforded by Article 1, Section 19, of the Constitution of Texas and the 14th Amendment to the Federal Constitution.

The Constitution of Texas authorizes the conservation of our natural resources. Article XVI, Section 59a, Vernon's Annotated Constitution. That the State has the constitutional authority to enact reasonable regulatory legislation for the conservation of our natural resources when not otherwise in contravention of constitutional principles, is settled law. 31a Tex. Jur., Oil and Gas, Sec. 354. The constitutional provision construed in the Oklahoma case, supra, provided a detailed method for ascertaining compensation for property taken for a public use.[2] This provision differs from the provisions of Article 1,

---

1. Two Justices dissenting.
2. See Appendix.

Section 17, of the Texas Constitution. In our opinion, the duty to make gas available to irrigators, as created by the Act, constitutes a "taking" within the meaning of Article 1, Section 17, of the Constitution of Texas.

We must presume that the Railroad Commission, in enforcing the provisions of this Act, will do so with the provisions of Article 1, Section 17, of the Texas Constitution in mind. We see no reason why the Commission could not adopt rules and regulations that would fully satisfy this constitutional requirement. However, since the Act itself does not set up machinery for determining the question of whether an applicant is entitled to the benefits provided by the Act, it will be incumbent upon the Railroad Commission to first determine that a particular applicant will apply the use of the gas to the purpose of soil conservation. Otherwise, an order of the Commission making gas available under the Act would be questionable on the ground that the taking was not for a public purpose. While a particular order of the Commission might be held violative of Article 1, Section 17, by an appellate court, because that order might be declared unreasonable, arbitrary, or capricious, [3] this possibility does not make the bill unconstitutional on its face.

The above quoted language in Section 2 of the bill presents an entirely different question. While it is true that the Act's basic objective, soil conservation, lies within the pale of the state's police power and authority, the provisions of Section 2 limiting the amount of gas available to the owner of the surface of land from which the gas is produced to an amount not more than that owner's royalty interest creates a fatal discrimination as between those surface owners owning royalty interests and those who do not.

Under the provisions of the Fourteenth Amendment of the Federal Constitution and Article 1, Section 19, of the Constitution of Texas, the Legislature cannot pass legislation which makes an improper discrimination by conferring the privileges on a class arbitrarily selected from a large number of persons standing in the same relationship to the privileges and purposes of an act, without a reasonable distinction of substantial difference. 16a C.J.S., Constitutional Law, Section 489. In order to be valid, a statutory classification

---

3. For example, see Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941, where the court held a proration order of the commission violative of Article 1, Section 17, of the Constitution of Texas and stated that the order constituted a "taking" within the meaning of that provision.

must reasonably promote some proper object of public welfare or interest, must rest on real and substantial differences, having a natural, reasonable, and substantial relation to the subject of the legislation, and must affect alike all persons or things within a particular class, or similarly situated. Hawaii Brewing Corp. v. Bowles, Em. App. 148 F.2d 846, Fort Worth and D.C. Ry. Co. v. Welch, Civ. App. 183 S.W.2d 730, 735, error ref'd. In our opinion, the discrimination between surface owners owning royalty and such owners who do not own royalty has no reasonable basis in the declared purpose of the legislation.

As to the constitutional question of the impairment of the obligations of contract, it is well settled that the obligations of contracts must yield to a proper exercise of the police power, and vested rights cannot inhibit the proper exercise of the police power. Treigle v. Acme Homestead Assn., 297 U.S. 189, 197 (1936). 16 C.J.S. Constitutional Law, Section 175. Where the "taking" is for a public purpose and "due process" is served by a method for fixing value, the impairment of contracts becomes immaterial. The true owner of the gas at the time of taking may be paid for its value whether he owns by contract of purchase or by holding a mineral title to land.

## SUMMARY

It is our opinion that committee substitute for Senate Bill No. 101 is unconstitutional on the ground that the limitation on gas made available under the bill to persons having royalty interests in connection with the surface devoted to agricultural activities, as provided by Section 2 of the bill, constitutes an unreasonable classification between persons similarly situated. We are of the opinion, however, that the bill is not otherwise unconstitutional.

Very truly yours,

WILL WILSON
Attorney General

By *Houghton Brownlee,*

Houghton Brownlee, Jr.
Assistant

HB:tiw

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman